Sylvan T. BAER, Appellant,

v.

DALLAS THEATER CENTER, Appellee.

No. 3683.

Court of Civil Appeals of Texas.

Waco.

Nov. 25, 1959.

Rehearing Denied Dec. 17, 1959.

Wm. Andress, Jr., Dallas, for appellant.

Scurry, Scurry, Pace & Wood, W. C. Scurry, Ralph Wood, Jr., Alan R. Bromberg, Dallas, for appellee.

WILSON, Justice.

Appellant donated to appellee 1.18 acres out of a wooded tract in the City of Dallas, bounded by Lemmon Ave., Turtle Creek, Blackburn Street and a railroad. This gift was consummated as follows:

(1) A contract was entered into between the parties in 1955 providing (a) that a deed to the property was to be placed in escrow, with delivery to be made to appellee when, within two years, it had on deposit $100,000, not including loans, committed to the building of a theater or school of drama on the land; and (b) that not later than one year after the delivery of the deed, appellee "shall, in good faith, commence the construction of a theater or school of drama upon such land, and shall

thereafter prosecute such building with reasonable diligence to completion."

(2) The deed, reciting appellant had given the property to appellee in memory of his parents for educational and charitable purposes, was deposited in accordance with an escrow agreement embodying the foregoing provisions as to the deposit.

(3) Included in the deed was the grant of an easement 44 feet wide "co-ordinate and equal with that reserved by the Grantor * * * for use as a private road for pedestrian and vehicular traffic, it being expressly understood that Grantor and Grantee shall have equal rights of user of said easement." The $100,000 deposit was made and the deed delivered to appellee by the escrow agent and filed for record September 19, 1956. The transaction presents no problem to this stage.

Appellee instituted this action against appellant, alleging compliance with all requirements on its part; that shortly after delivery of the deed, appellant embarked upon a course of conduct designed to frustrate and delay commencement of construction; that the property was zoned by the City of Dallas as residential, and appellant opposed re-zoning and issuance of a building permit; that he constructed locked steel gates at both ends of the roadway described in the easement, preventing ingress and egress; that he had sought to enjoin construction. Appellee asked for injunction restraining appellant from locking gates or interfering with use of the easement or construction of the theater. It also prayed for dissolution of a temporary injunction obtained by appellant which restrained the Center from removing an existing curb within the easement. Declaratory judgment was sought that appellee had complied with the provisions of the grant and that it had certain detailed rights to be discussed herein.

Appellant answered that construction had not been commenced in good faith within one year after delivery of the deed and

asked cross-relief declaring appellee's rights had terminated, that title be quieted in him and that appellee be required to reconvey the property.

Jury findings were to the effect that appellee commenced construction in good faith, as required by the 1955 agreement. The trial court rendered judgment decreeing that title to the property is vested and quieted in appellee; that the temporary injunction obtained by appellant be dissolved and that the declaratory relief prayed for be granted.

By a group of seven points, Baer contends the Center failed, conclusively and as a matter of law under the undisputed evidence, to commence construction in good faith within one year after delivery of the deed.

■ The deed involved here was absolute on its face. Neither the deed nor the contract contained provisions for forfeiture or reversion. Forfeitures not being favored, courts are inclined to construe provisions in a contract as covenants rather than as conditions; and if its terms are fairly susceptible of an interpretation that will prevent forfeiture, they will be so construed. "Unless the consideration in a contract is expressed in terms which unmistakably will demand a forfeiture for non-performance, a mere breach of such terms will not authorize the cancellation of the contract." Henshaw v. Texas Natural Resources Foundation, 147 Tex. 436, 216 S.W. 2d 566, 570.

■ In determining whether appellant "commenced construction," appellant urges application of cases involving the right to continue construction as against adoption or amendment of zoning regulations (79 A.L.R. 927, 96 A.L.R. 1337, 117 A.L.R. 1117, 124 A.L.R. 540), and those pertaining to the drilling clause in oil and gas leases. Many of these cases militate against appellant's position. However, appellee is chartered as a charitable corporation and the gift in question is for charitable purposes.

If it be necessary to construe the term in question, such grants "are held in such high regard by the law that the rules of construction are more liberal to sustain them than they would be if the gifts were to individuals", Powers v. First Nat. Bank of Corsicana, 138 Tex. 604, 161 S.W.2d 273, 278, 282; and we do not regard the more stringent interpretation in the arms-length situations as being necessarily controlling.

The decisions cited by appellant demonstrate the phrase "commence construction" does not lend itself to precise definition, since each case turns on its peculiar facts. The same is true of the term "good faith," which has been held not to require definition. Dunning v. Badger, Tex.Civ.App., 74 S.W.2d 151, 155, writ dis.

The deadline for commencing construction of the building in question is treated by the parties as being September 19, 1958. There is evidence to show that before and after delivery of the deed, the Center, with Baer's active encouragement and participation, engaged in a fund-raising campaign as a result of which over $300,000 in cash or pledges was raised. Frank Lloyd Wright, employed as architect at an expense of over $20,000, prepared preliminary drawings, and on October 4, 1957, was authorized to prepare working drawings. In 1955, since the land in question was in an area zoned for residential purposes, appellee applied to the City Planning Commission for zoning change. The building plans had not then advanced sufficiently to enable the Center to submit required site plans and, on recommendation of the city planning authorities, a new application was thereafter filed. Appellant having then "turned 100% against" the Center, actively protested the zoning change and issuance of a building permit. At this point he erected locked metal gates at each end of the roadway included in the easement, testifying he did not mean to let appellee in. Final plans and specifications were submitted by the architect in May, 1958. Appellee promptly invited bids and, on June 30th, awarded a construction contract providing for expenditure of approximately $669,000.

An ordinance was passed by the Dallas City Council August 11, 1958, authorizing use of the property under a special permit for an educational institution with development to be "generally in conformance" with a site plan attached to the ordinance and approved.

On September 2, 1958 (appellee having succeeded after injunction proceedings in having the gates unlocked), the contractor was notified to begin construction; and he moved equipment onto · the site, the previous day being Labor Day. Appellant's car parked across the road blocked the contractor's entrance. The contractor started removing brush to clear the site, testifying this was the first and essential step in construction, and its beginning. He also began removing a curb which was 14 feet inside the boundaries of the roadway easement, in order to build a ramp and base for access. He also established bench marks and grid lines for reference, preliminary to staking the building in the heavy undergrowth and brush.

Appellant thereupon entered the project and notified the contractor to stop work "or he would be out there within 30 minutes with an injunction." On the same date he applied for a temporary restraining order and on September 8th he obtained a temporary injunction restraining the Center from breaking into or destroying the curbing in any place other than for entrance. Later, appellant having again threatened to lock the gates, he was enjoined therefrom and from interfering with construction.

On September 15, 1958, the contractor again moved earth-moving equipment, laborers and trucks onto the site, and resumed the work of clearing. He was interrupted by a 45 minute public groundbreaking ceremony and by rain. During the next three days the sub-contractor continued clearing the site, which was a

densely wooded area, and began grading and excavation in rock under supervision of the architect. Construction of a ramp required by the contract was begun. The foundation sub-contractor commenced excavation in rock for foundation and basement. Heavy rain made work impossible on September 19. Thereafter, rock excavation was continued with explosives, and construction continued without interruption to the time of trial.

We are unable to say under this evidence that appellee failed conclusively, and as a matter of law, to "commence construction in good faith" as provided by the contract. The facts urged by appellant relating to this issue may have probative effect, but are not conclusive. The contention is overruled.

The next series of points challenge that portion of the judgment dealing with the 44 foot easement referred to in the third paragraph of the opinion. Appellee pleaded, and the evidence showed that about 15 or 20 years before the grant, a crushed stone roadway 30 feet wide had been constructed within the boundaries of the easement. On one side of the original roadway was a concrete curbing, which was 14 feet inside the easement boundary. The roadway had been allowed to deteriorate in places, while vegetation had overgrown portions of roadway and curb. There was evidence that only 12 to 16 feet of passable way then remained.

The declaratory portions of the judgment decreed, in accordance with appellee's pleading, that it had the right, in a reasonable manner, to "use and improve the easement" to its full dimensions, "including the right to remove all obstacles" within the right-of-way, such as curbs, trees, rocks and debris; the right to lay out and establish a sidewalk eight feet in width on the southernmost part of the easement; the right to grade and surface the remaining easement area as a roadway for vehicular traffic; the right to establish

lanes for direction of traffic and for the parking of at least 140 automobiles within the area, all at the Center's expense. It provided appellee had the right to have its students, patrons, employees and invitees "use and enjoy the sidewalk and roadway in a normal and customary manner", and that appellant "shall have equal rights" therein.

Appellant's points attacking this portion of the judgment fall into these categories: (1) no right exists to make physical alterations within the area of the easement without his consent; (2) the grant does not authorize removal of the existing curb; (3) the right to park vehicles on the way is not included in the grant; (4) appellee has no right, under the grant, to change the traffic flow to a single direction and require the joint owner to limit his use accordingly without his consent and over his protest; or (5) to construct a sidewalk.

Points in categories (1) and (2) are overruled on authority of Williams v. Thompson, 152 Tex. 270, 256 S.W.2d 399, 405, which, although involving loss of lateral support, and while questioning an "'unreasonable' or 'unnecessary' injury to the servient estate" limitation as a proper test of the easement grantee's rights, held that a joint owner of an easement had the right to grade, cut out and use the entire width of a private way. This right is uniformly recognized. 112 A.L.R. 1303; 3 Tiffany, Real Property, (3rd Ed.) Sec. 810, p. 346, Sec. 803, p. 323; 2 Thompson, Real Property, (Perm.Ed.) Sec. 678, p. 348; 17A Am.Jur., Sec. 132, p. 140; Restatement, Property—Servitudes, Secs. 483, 485; 15–B Tex.Jur. Sec. 34, p. 298.

As to the right to park vehicles, the nature and quality of the easement in question must be regarded. It is an express grant. It is not limited to mere right of ingress and egress. Its declared purpose is "for use as a private road for pedestrian and vehicular traffic." This purpose is

further expressed by the recital in the grant that it is made as a concomitant of the gift of the theater site, to which it is the sole entrance. It is undisputed that appellant knew at that time that a building to cost at least $450,000 to be used as a dramatic school and theater was to be constructed on the site; and that large numbers of patrons, students, artists and employees would use its facilities. The terms of the grant indicate a recognition of the necessity for "vehicular traffic" in this use. Both parties obviously contemplated existence of parking facilities. The planned seating capacity of the Center was approximately 400. The plats of the area in evidence demonstrate automobile parking facilities do not exist on the theater site to accommodate any such number.

■ "In determining the scope of a grant, the language used, the situation of the parties, the purposes of the grant and the nature of the subject matter, may all be considered." Joyner v. R. H. Dearing & Sons, Tex.Civ.App.1939, 134 S.W.2d 757, 759. 11 American Law of Real Property (1952), Sec. 865, p. 276; 3 Tiffany, Real Property, (3rd Ed.) Sec. 802, p. 320; 3 Powell, Real Property (1952) Sec. 415, pp. 459, 462; 1 Thompson, Real Property, (Perm.Ed.) Sec. 359, p. 579; 28 C.J.S. Easements § 77, p. 755.

The cases cited by appellant as denying parking rights are parking meter or parking regulation cases; or involve obstruction of common-driveways and alleys. They are not applicable here. The declaratory relief as to parking sought in the instant case had its inception in the imposition of an express condition by the City of Dallas in the ordinance granting the special permit, that off-street parking be provided at the minimum ratio of one space for each three seats in the auditorium. There is nothing in the judgment which can be construed as giving appellee any exclusive parking privileges, or as interfering with or depriving appellant of his rights under the grant.

■ We believe the rule here applicable is that stated in 37 A.L.R.2d 945: "While neither owner has any absolute right to park vehicles on the driveway or right-of-way, each has a right to park thereon at such times and in such a manner as not to interfere with its use by the other." Sec. 17-A Am.Jur. Sec. 124, p. 735; 103 A.L.R 682; 3 Tiffany, Real Property, Sec. 803, p. 326. The judgment is consistent with this rule.

■ ■ We do not construe that portion of the judgment authorizing appellee to establish lanes for the direction of traffic to do more than permit reasonable provision for its orderly flow in safety as regards the Center's employees, students, patrons and invitees. Appellee, of course, may not limit the enjoyment nor burden the use of the easement by appellant in this respect. "It is assumed that the owner of an easement and the possessor of the servient tenement are to exercise their respective rights and privileges in a spirit of mutual accommodation." Restatement, Property—Servitudes, Sec. 485, p. 3026.

■ ■ The declaration in the judgment that appellee is authorized to construct a sidewalk is to be examined in the light of the language of the grant, which expressly includes as a purpose its use for "pedestrian traffic", and the known purposes of the gift. The leading case on the question of the right to construct sidewalks is Guillet v. Livernois, 297 Mass. 337, 8 N.E.2d 921, 922, 112 A.L.R. 1300, in which it was held, "The construction of a sidewalk, a usual incident of such a way, was proper." The general rule is that the owner of the easement may prepare, maintain and improve it "to an extent reasonably calculated to promote the purposes for which it was created." 112 A.L.R. 1303; 17-A Am.Jur. Sec. 132, p. 741; Restatement, Property—Servitudes, Sec. 485, p. 3025. The parties here obviously contemplated some degree of safety and convenience for "pedestrian traffic." In fact, the record indicates provi-

sion had been made by appellant for a pedestrian walkway adjacent to the pre-existing 30 foot roadway within the easement boundaries. Such a sidewalk does not burden or interfere with, but enhances, the free and equal use and enjoyment of the easement by appellant for the announced purposes. It does not extend or broaden the grant; it makes it functional.

Appellant's other points have been carefully considered and are overruled. The judgment is affirmed.