SELECTED LANDS
CORPORATION, Appellant,

v.

Ralph J. SPEICH, Robert P. Kellie, and
James B. Micros, Appellees.

No. 01–84–0740–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 29, 1985.
Rehearing Denied Jan. 16, 1986.

J. Craig Youngblood, Vinson & Elkins, Houston, for appellant.

Robert L. Burns, Sears & Burns, J. Mark Breeding, Houston, for appellees.

Before JACK SMITH, COHEN and DUNN, JJ.

## OPINION

DUNN, Justice.

Selected Lands Corporation appeals from a declaratory judgment in which the trial court ruled that certain restrictive covenants were not enforceable by Selected Lands against owners of certain lots in a residential development in Grimes County, known generally as "Bluebonnet Country." Selected Lands is a successor developer of Bluebonnet Country. Appellees are the owners of the lots in question, and the pertinent restrictive covenants require property owners to pay monthly or annual fees for the maintenance of the subdivision's common areas or amenities, such as the roads, the swimming pool, the tennis courts, and the golf course.

After beginning trial to the jury, the parties concluded that there were no fact issues in dispute, agreed to dismiss the jury, and submitted the case to the court. Both sides filed their motions for judgment with supporting briefs, and the court subsequently entered its declaratory judgment holding that:

(1) Certain restrictive covenants recorded in the Deed Records of Grimes County, Texas, have not been imposed as covenants running with the land upon certain lots owned by appellees;

(2) No general plan or scheme has been imposed upon certain sections of Bluebonnet Country;

(3) The maintenance fee provisions of the restrictive covenants burdening certain lots owned by appellees violate the statute of frauds for want of an adequate property description and are therefore unenforceable; and

(4) The previous developer's assignment to Selected Lands of the right to collect maintenance fees violates the statute of frauds and is therefore unenforceable.

In its first two points of error, Selected Lands asserts that the trial court erred in declaring (1) that the restrictive covenants on certain lots owned by appellees have not been imposed as covenants running with the land, and (2) that no general plan or common scheme has been imposed upon certain sections of Bluebonnet Country.

In Texas, restrictive covenants may be created four ways: (1) by grant, as a covenant running with the land, (2) by mutual agreement, (3) by implication, as a reciprocal negative easement, and (4) by a general plan of development, as an equitable servitude. *See Billington v. Riffe,* 492 S.W.2d 343 (Tex.Civ.App.—Amarillo 1973, no writ); *Saccomanno v. Farb,* 492 S.W.2d 709 (Tex. Civ.App.—Waco 1973, writ ref'd n.r.e.); *Cannon v. Ferguson,* 190 S.W.2d 831 (Tex. Civ.App.—Fort Worth 1945, no writ); *Hooper v. Lottman,* 171 S.W. 270 (Tex.Civ. App.—El Paso 1914, no writ).

In the present case, we are concerned with the first and fourth ways of creating restrictive covenants, i.e., with covenants that run with the land at law and with equitable servitudes. The establishment of a general plan or scheme is relevant only to the equitable servitude theory. *Collum v. Neuhoff,* 507 S.W.2d 920 (Tex.Civ.App.— Dallas 1974, no writ).

The creation of a covenant running with the land at law requires that:

(1) privity of estate exist between the covenanting parties;

(2) the covenant must relate to something in esse;

(3) the covenant must touch or concern the land; and

(4) it must be the intention of the original covenanting parties that the restrictive covenant run with the land.

*Billington v. Riffe*, 492 S.W.2d at 346.

■ We find that the restrictive covenants burdening those lots owned by appellee Speich, specifically referred to by the trial court, were imposed as covenants running with the land. Restrictive covenants evidencing the intent that they run with the land were properly recorded prior to Speich's purchases, and the deeds to those lots were expressly made subject to all subsisting easements and restrictions of record. *See Aull v. Kraft*, 286 S.W.2d 460, 461 (Tex.Civ.App.—Waco 1956, writ ref'd n.r.e.).

In contrast, deeds to certain lots owned by appellees Micros and Kellie do not state that the land is subject to restrictive covenants, although such covenants had been recorded at the time of their purchases.

It is undisputed that appellees Micros and Kellie had notice of the restrictive covenants. Indeed, it appears that the covenants and the corresponding benefits to the lot owners were used as selling points to induce their purchase of lots in Bluebonnet Country.

A purchaser of a lot who takes with constructive notice of restrictions becomes bound thereby and becomes vested with the rights and benefits flowing therefrom. *Cornett v. City of Houston*, 404 S.W.2d 602, 605 (Tex.Civ.App.—Houston 1966, no writ). The key to enforceability of such equitable covenants is the fact that the purchasers took with notice of the covenant or servitude. *Frey v. DeCordova Bend Estates Owners Ass'n*, 632 S.W.2d 877 (Tex.App.—Fort Worth 1982), *aff'd*, 647 S.W.2d 246 (Tex.1983).

As previously noted, the establishment of a general plan or scheme is also relevant to the equitable servitude theory. *Collum*, 507 S.W.2d at 923. It is not essential in the execution of a general plan that every lot in the subdivision be imposed with a restriction. *Zent v. Murrow*, 476 S.W.2d 875, 879 (Tex.Civ.App.—Austin 1972, no writ). It is important to note that most cases which involve restrictive covenants in real estate developments or subdivisions deal with those covenants as equitable servitudes and not as "real" covenants. As stated by the El Paso Court of Civil Appeals in 1914:

"The most familiar cases in which courts of equity have upheld the rights of owners of land to enforce covenants to which they were not parties are those in which it has appeared that a general building scheme or plan for the development of a tract of land has been adopted, designed to make it more attractive for residential purposes by reason of certain restrictions to be imposed on each of the separate lots sold."

*Hooper*, 171 S.W. at 272.

Where a general plan of development has been maintained and has been understood, accepted, relied upon, and acted upon, it is binding and enforceable so long as the grantee of a lot, which is not specifically restricted, either took with notice of the restriction or with knowledge of the general plan. *See Burns v. Wood*, 492 S.W.2d 940 (Tex.1973); *Bein v. McPhaul*, 357 S.W.2d 420 (Tex.Civ.App.—Amarillo 1962, no writ).

■ We hold that the restrictive covenants which purport to burden the properties of appellees Micros and Kellie are valid and enforceable as equitable servitudes and find that the trial court erred in holding that no general plan or scheme has been imposed upon the property of the appellees.

As the court stated in *Lehmann v. Wallace*, 510 S.W.2d 675, 680 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.), "[s]uch a plan may be established in various ways, such as by express covenant, by implication from a filed map, or by parol representa-

tions ... or the grantor pursuing a course of conduct indicating a neighborhood scheme, leading the several purchasers to assume its adoption and adherence to it by such conduct." In *Collum*, the court noted the recording of a plat, the restriction of certain areas for residences and others for parks, streets, and common areas, and the levying of an assessment against all lot owners for joint maintenance as circumstances which tended to prove the implementation of a general plan or common scheme for development. 507 S.W.2d at 927.

■ In the present case, the developers of Bluebonnet Country satisfied these various methods of establishing a scheme of development. Plats showing residential lots and common areas were duly filed and recorded, as were the specific covenants in question, and testimony of the appellees themselves showed that the developers had provided a golf course, lakes, and tennis courts, as promised. "Where parcels are sold with reference to such a uniform plan to persons having notice thereon, the restrictions may be enforced, irrespective of the order of the several conveyances and irrespective of whether the covenants run with the land." *Lehmann*, 510 S.W.2d at 681. We find that the trial court erred in declaring that no general plan or common scheme has been shown in the development of Bluebonnet Country.

Appellant's first and second points of error are sustained.

■ Appellant alleges, in a collateral issue, that appellees Speich and Micros are judicially estopped to deny the enforceability of the Bluebonnet Country restrictive covenants because, in an earlier petition, Speich and Micros had complained that Selected Lands and its predecessor had violated those same deed restrictions that are the basis of the instant action. The trial court took judicial notice of this first amended petition and the attached affidavits of Speich and Micros.

In the affidavits, Speich and Micros testified that the matters contained in the petition were "true to [their] knowledge, except those stated on information and belief, which [they] believe to be true." We find that such statements are not sufficient to invoke the doctrine of judicial estoppel, and overrule appellant's point of error. *See Burke v. Satterfield*, 525 S.W.2d 950 (Tex. 1975).

Selected Lands' third point of error asserts that the maintenance fee provisions of the restrictive covenants burdening the lots owned by appellees violate the statute of frauds for want of an adequate property description and are therefore unenforceable.

Selected Lands' fourth point of error asserts that the trial court erred in declaring that the assignment to Selected Lands of the right to collect maintenance fees violates the statute of frauds for lack of an adequate property description and is invalid and unenforceable.

The statute of frauds is satisfied when an interest conveying or reserving an interest in land furnishes within itself, or by reference to other identified writings then in existence, the means or data by which the particular interest in land to be conveyed can be identified with specific and reasonable certainty. *Pick v. Bartel*, 659 S.W.2d 636 (Tex.1983).

■ The restrictive covenants burdening the lots owned by appellees Speich and Micros contain the subdivision name and section number and expressly refer to plats recorded in the deed records of Grimes County. We hold that the restrictive covenants imposed on Speich's and Micros' lots do not violate the statute of frauds for want of an adequate property description.

■ The restrictive covenants burdening Kellie's lot state only that they are applicable to Forest Trails, Sections II and III, Grimes County, Texas; however, we also find that these restrictive covenants contain an adequate property description. In *Pick*, 659 S.W.2d at 638, our Supreme Court held that a conveyance of an interest in land violated the statute of frauds because no city, county, or state was men-

tioned in connection with its location, no lot or block number was mentioned, nor did there appear a description by any particular name. We hold that a reference to "Forest Trails, Sections II and III, Grimes County, Texas," which describes the property by a particular name, specifies section numbers, and gives the county and state in which the property is located, does not violate the statute of frauds for want of an adequate property description. 659 S.W.2d at 637.

We are also of the opinion that the assignment from Bluebonnet Country Corporation to Selected Lands of the right to collect maintenance fees, dated August 17, 1981, does not violate the statute of frauds for lack of an adequate property description. The assignment states:

> Whereas the undersigned corporations hold by virtue of certain "Restrictions and Covenants" agreements filed for record in Grimes County, Texas, and covering and affecting what is known as Bluebonnet Country, Forest Trails, Sections 2 and 3, and Delago Delta, Section 1, subdivisions in Grimes County, Texas, and more particular [sic] described in those certain plats of such subdivisions filed in the Deed Records and Real Property Records of Grimes County, Texas, to which record reference is hereby made.

The naming of designated subdivisions located in Grimes County, particularly when coupled with references to recorded plats, furnishes the means or data by which the particular interest in and to be conveyed can be identified with reasonable certainty. *Pick,* 659 S.W.2d at 637.

Appellant's third and fourth points of error are sustained.

Appellant's fifth and sixth points of error assert that the trial court erred in ordering an accounting of all maintenance fees collected by Selected Lands from appellees, and further erred in awarding attorneys' fees and interest to appellees and denying the same costs to Selected Lands.

Because we hold that the trial court erred in granting a declaratory judgment in favor of appellees, we also hold that appellees are not entitled to the accounting as ordered and are not entitled to recover their attorneys' fees. Appellant's fifth and sixth points of error are sustained.

The judgment of the trial court is reversed, and judgment is hereby rendered for appellant.