# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-02-00576-CV

**Ronald L. Doll and Paradise Cove Marina and Yacht Club, L.L.C./Margaret R. Cain Hurst; Arthur Rhodes; Darrell Hamric, Jr.; The Colonnetta Family Limited Partnership; Preston M. Smith; Carolyn M. Smith; and Henry D. Smith, Appellants**

**v.**

**Margaret R. Cain Hurst; Arthur Rhodes; Darrell Hamric, Jr.; The Colonnetta Family Limited Partnership; Preston M. Smith; Carolyn M. Smith; and Henry D. Smith/Ronald L. Doll and Paradise Cove Marina and Yacht Club, L.L.C., Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT NO. 93-12407, HONORABLE DARLENE BYRNE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

When the owner of a marina on Lake Travis attempted to keep surrounding lakefront property owners from using his beach property for recreational purposes, a suit for declaratory and injunctive relief was filed. The marina owner also provoked a title dispute with another lakefront homeowner. The two suits were consolidated and the issues were tried to a jury. The jury found (1) that the lakefront homeowners had an easement across the beach property for recreational purposes, (2) that the other homeowner had established title to the disputed tract by adverse possession, and (3) that the marina owner did not trespass in clearing a path across that homeowner's

property.  All parties appeal.  The marina owner challenges the sufficiency of the evidence, certain jury instructions, and other matters.  The homeowners challenge the jury's failure to find that the marina owner trespassed, and other matters.  We hold that the evidence is legally and factually sufficient to support the jury's verdict, overrule all other issues asserted on appeal, and affirm the trial court's judgment in all respects.

## BACKGROUND

Margaret R. Cain Hurst and Arthur Rhodes, Darrell Hamric, Jr., The Colonnetta Family Limited Partnership,  Preston and Carolyn Smith, and Henry D. Smith (collectively, "the homeowners") own individual lakefront lots along the shores of Lake Travis.  Ronald L. Doll and Paradise Cove Marina and Yacht Club, L.L.C. (collectively, "Doll") own a large tract of land to the north and west of the homeowners' lots.  In the northern part of his property, Doll operates a marina. The western portion of Doll's tract is the beach property that lies between Lake Travis and the lots owned by the homeowners.  Because of the variable levels of Lake Travis, the beach property is sometimes entirely underwater.  When the lake level is up, the homeowners do not need to cross the beach property to get to the water; however, when the lake is down and the beach property exposed, the homeowners must cross it to access the lake.

### The Area History

In the mid 1940s, August Brill (Brill Sr.) and his son Arno Brill (Brill Jr.) owned adjacent tracts of land on the shores of Lake Travis.  In 1944, Brill Sr. filed a plat map designating a portion of his land "the Arno Brill Third Subdivision."  Apparently this was part of a joint

2

undertaking with his son, who that same year platted "the Arno Brill Second Subdivision" out of his adjacent land. Both plat maps indicate that the subdivided lots are "lake tracts"[1] and show the subdivided lots bordering Lake Travis. In April 1945, Brill Sr. conveyed lots 21 and 22 out of the third subdivision to the predecessors in title to Cain Hurst and Rhodes, Hamric, and Colonnetta.[2] The following month Brill Sr. conveyed the beach property and the unplatted parcels of the land surrounding the third subdivision[3] to Brill Jr.

### *The Third Subdivision Homeowners*

Although there are no express easements in their chains of title, the homeowners and their predecessors in title had historically used the beach property for recreational purposes such as

---

[1] The plat maps are titled:

ARNO BRILL
SECOND SUBDIVISION
LAKE TRACTS
TRAVIS COUNTY, TEXAS

ARNO BRILL
THIRD SUBDIVISION
LAKE TRACTS
TRAVIS COUNTY, TEXAS

[2] Lot 21 was further subdivided. All the appellees, except the Smiths, derive their title through lots 21 and 22.

[3] The deed from Brill Sr. to Brill Jr. contained the following attempt to reserve an easement across the beach property for the benefit of the third subdivision lot owners:

> Save and except, also, from this conveyance an easement for the benefit of all persons and future owners of the Lots out of said subdivision enumerated above, over the land lying between the Lake front lines of the said lots and the waters of Lake Travis.

swimming, sunbathing, fishing, and boat docking. In 1981, Doll purchased the marina and initiated efforts to exclude the homeowners and their neighbors from using the beach area. After numerous lawsuits arose, in 1993 Doll sued Cain Hurst, Hamric, and Colonnetta[4]—all of whom owned lakefront homes in the third subdivision—seeking declaratory and injunctive relief to bar the homeowners from using the beach property.

A short time later, Doll decided to set up a "park" and charge admission to the beach property. He erected an eight-foot tall chainlink fence running in front of the third-subdivision homeowners' lots—between them and the beach area.[5] The homeowners were granted a temporary injunction ordering Doll to remove the fence, but the court allowed the fence poles to remain in place pending the trial on the merits of this case.

### The Smiths

In 1975, Preston Smith and his father Henry Smith purchased a 1.42-acre tract in a small unplatted area lying between two sections of the third subdivision. The Smiths built a cabin on this tract and used the beach area for recreational purposes just as the third-subdivision homeowners did. In the late 1980s, Preston Smith and his wife Carolyn decided to purchase an adjoining parcel of land, which had been advertised as a one-acre tract. When the tract was surveyed prior to closing it was discovered that the metes and bounds description in the original 1947 deed from Brill Jr. did not include the bottom .45 acres of this property. As a result, at closing the tract

---

[4] Doll added Rhodes as a defendant in 1995 by amended petition.

[5] Doll testified that he planned to add a gate to the fence and give to the homeowners a key so that they could exercise their ingress and egress rights, which Doll conceded they possessed.

was conveyed as two separate parcels, one .45-acre tract and one .678-acre tract. There is no indication that the property had ever before been treated as separate tracts. There is rockwork, terracing, and a path extending from the upper .678-acre portion down onto the lower .45-acre portion. The Smiths' predecessors in title had paid property taxes on one full tract comprised of all the land since the 1960s.

In 1993, Doll contacted the Smiths and claimed that he owned the lower .45-acre tract. A short time later, Doll bulldozed a path from an area road through the Smiths' property to the lakeshore in order to clear an easement.[6] The path ran more or less along the northwestern edge of the upper .678-acre tract and bordered the 1.42-acre tract that Preston and Henry Smith had purchased in 1975. The Smiths then filed suit, seeking damages for trespass and a declaratory judgment that they had acquired title to the .45-acre tract by adverse possession, and that they possessed a recreational easement entitling them to use of the beach property.

### Jury Verdict

In 1996, the Smiths' suit was consolidated with Doll's suit against the third-subdivision homeowners, and the parties were realigned. The case was tried to a jury, which found that all the homeowners had acquired (1) an implied easement, (2) a negative easement or servitude arising from a general plan or scheme of development, (3) an easement by estoppel, and (4) an easement by prescription, entitling them to use the beach property for recreational purposes. The

---

[6] The deed from Arno Brill to the Smiths' predecessors in title states "there is reserved hereby to the grantors herein, their heirs and assigns, an easement 20 foot in width along the west line of said tract . . . for the purpose of going to and from the above reserved roadway to the waters of Lake Travis."

5

jury also found that the Smiths had established title to the disputed .45-acre tract by adverse possession and that Doll did not trespass upon the Smiths' property by clearing the path.

On appeal, Doll claims that there is no evidence or factually insufficient evidence to support the jury's findings that the homeowners have acquired a recreational easement across the beach property, and that the Smiths have acquired title to the .45-acre tract by adverse possession. The homeowners also appeal, claiming that there is legally and factually insufficient evidence to support the jury's failure to find that Doll trespassed when clearing the path across the Smiths' property.

**DISCUSSION**

To review the evidence under a no-evidence challenge, we consider all the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor. *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285-86 (Tex. 1998). We will uphold the finding if more than a scintilla of evidence supports it. *Burroughs Wellcome Co. v. Crye*, 907 S.W.2d 497, 499 (Tex. 1995). Evidence amounts to more than a scintilla if reasonable minds could arrive at the finding given the facts proved in the particular case. *See Crye*, 907 S.W.2d at 499; *Transportation Ins. Co. v. Moriel*, 879 S.W.2d 10, 25 (Tex. 1994). When reviewing a challenge to the factual sufficiency of the evidence, we must consider, weigh, and examine all of the evidence in the record. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989). The jury finding should be set aside only if the evidence is so weak, or the finding so contrary to the great weight of the evidence, as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

6

***Recreation on the Beach***

The jury found that the homeowners had established their entitlement to use the beach area for recreational purposes under theories of implication from a general scheme of development, implied easement, easement by estoppel, and easement by prescription. Each of these theories was submitted in a separate question. In his third point of error, Doll claims that the evidence is both legally and factually insufficient to support the jury's finding that the homeowners' property and the beach property were part of a general plan or scheme of development entitling the homeowners to use the beach property.

In Texas, land-use restrictions in the form of equitable servitudes may be created by implication from a general plan of development covering a tract divided into a number of lots. *See Selected Lands Corp. v. Speich*, 702 S.W.2d 197, 198-200 (Tex. App.— Houston [1st Dist.] 1985, writ ref'd n.r.e)*; Lehmann v. Wallace*, 510 S.W.2d 675, 680 (Tex. App.—San Antonio 1974, writ ref'd n.r.e.); *cf. Evans v. Pollock*, 796 S.W.2d 465, 466 (Tex. 1990). A purchaser who takes with constructive notice of those restrictions is bound by them. *See Selected Lands*, 702 S.W.2d at 199; *Lehmann*, 510 S.W.2d at 680-81. In many cases such a general plan is established by inserting substantially uniform covenants in each deed out of a common development. *See Evans*, 796 S.W.2d at 466 (quoting *Miner v. Lynchburg*, 129 S.E.2d 673, 679 (Va. 1963)); *Lehmann*, 510 S.W.2d at 680. However, a general development plan may be established in various other ways such as by implication from a filed map, or by parol representations made in sales brochures, maps, advertising, and oral statements on which the purchaser relied in making his purchase. *Lehmann*, 510 S.W.2d at 680; *see also Selected Lands*, 702 S.W.2d at 199-200.

7

Doll argues that there is no evidence or factually insufficient evidence to support the jury's finding that the homeowners' lots and the beach property were part of a general plan that affords the homeowners recreational access to the beach property.[7] We disagree. The filed plat maps of the Arno Brill second and third subdivision alone constitute more than a scintilla of evidence establishing a general scheme of development encompassing the homeowners' right to recreational use of the beach property.[8] Both plats describe the properties as "Lake Tracts." Moreover, the words "Lake Travis" are written immediately adjacent to the western boundary of the lots. The maps clearly show typical "lakefront property." Normally, the benefit of owning such a lot is the ability to make use of the property bordering the lake. It is clear that anyone buying a lake tract after viewing either of the plat maps would feel enormously deceived upon being told that he lacks the right to recreate along the lakeshore when the lake drops to a certain level. The plat-map representations of the lots as lakefront property were likely made for the purpose of inducing the purchasers of the lots to pay higher prices. *See Lehmann*, 510 S.W.2d at 680 (citation omitted).

Additionally, Nancy Bible, a third subdivision homeowner and an old friend of Brill Jr., testified that an earlier owner of the marina and beach property once attempted to stop her from cleaning up the beach area in front of her home. She discussed the matter with Brill Jr., who

---

[7] Doll stipulated at trial that the homeowners have the bare right to cross the beach property to get to and from the waters of Lake Travis.

[8] The evidence indicates that the two subdivisions were part of a joint undertaking by Brill Sr. and Brill Jr. The Brills used the same surveyor to prepare the subdivision plats for both subdivisions. The surveyor worked from a single work file. Two of Brill Sr.'s successive bookkeepers notarized various deeds conveying lots from each subdivision. Moreover, separate deeds each conveying lots from different subdivisions sometimes contained nearly identical language.

indicated that he would speak with the marina owner. The marina owner never again troubled Bible about her use of the beach property. After the incident, the Bibles built a boat dock on the beach property, which Brill Jr. himself occasionally used. Bible testified that Brill Jr. lived in the area for the rest of his life, and that during his lifetime the beach area contained several boat docks and ramps. Bible's testimony certainly constitutes some evidence that the Brills intended the beach property in their subdivisions to be used by the homeowners for recreational purposes.

The Brills evidenced their intent to inaugurate a general plan of development for the benefit of themselves and the purchasers of their "lake tracts" in yet another way. Each deed conveying a lot out of the two subdivisions contained a restriction against using the lot for commercial purposes, such as selling bait or renting boats. Apparently, the Brills envisaged a mutually beneficial development plan, where they would grant lake access to the lot owners, and such owners would serve as captive customers for the marina Brill Jr. owned and operated. It is noteworthy that in some of the subdivision deeds the Brills explicitly restricted grantees from placing buildings *other than boat docks*, and from conducting any commercial activities on the beach property; however, such deeds specifically stated "these restrictions do not include the right to fish, hunt or use and enjoy said tract of land as a place of recreation." Unfortunately, it appears that the Brills did not use attorneys because this restrictive language is absent from some of the deeds out of the subdivisions, including those in these homeowners' chains of title. Nonetheless, this deed language, when combined with the plat-map representations and the testimony of Nancy Bible, is strong evidence that the Brills intended to grant to the purchasers of their lake tracts the right to use the beach property for recreational purposes.

9

It is apparent from the record that the homeowners, as well as the Brills and their successors in title, had the mutual benefit of this implicit arrangement for many years. It is also clear that Doll had notice of this arrangement when he purchased the marina. We find legally and factually sufficient evidence in the record to support the jury's finding that the homeowners' property and the beach property were part of a general plan or scheme of development entitling the homeowners to use the beach property for recreational purposes. We overrule Doll's third point of error.

Apparently impressed by the homeowners' case, the jury found, in separate questions, that the homeowners had also established their entitlement to use the beach area for recreational purposes under theories of implied easement, easement by estoppel, and easement by prescription. Because we have held that the record contains legally and factually sufficient evidence to support one of the homeowners' theories, we need not address the other three. *See* Tex. R. App. P. 47.1 (opinions must be as brief as practicable). We therefore do not consider Doll's first, second, fourth, and fifth points of error.

### *Adverse Possession*

In his sixth and seventh points of error, Doll claims that there is no evidence or factually insufficient evidence to support the jury's findings that the Smiths obtained title to the .45-acre tract by adverse possession. The jury found, in answers to separate questions, that the Smiths had acquired title to the tract under both the five and ten-year adverse-possession statutes. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 16.025-.026 (West 2002). The ten-year statute provides: "A person must bring suit not later than 10 years after the day the cause of action accrues to recover real

10

property held in peaceable and adverse possession by another who cultivates, uses, or enjoys the property." *See id.* § 16.026(a). The statute defines "peaceable possession" as "possession of real property that is continuous and is not interrupted by an adverse suit to recover the property"; "adverse possession" is defined as "actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." *See id.* § 16.021.

The Smiths did not begin to exercise dominion over the tract until July 1990 when they acquired the deed from their predecessor in title, Ben McCullough. Therefore, to establish their adverse-possession claim, they had to "tack" their period of adverse possession to McCullough's, which they were entitled to do under section 16.023 of the civil practice and remedies code. *See id.* § 16.023 (West 2002).[9] Doll claims that there is insufficient evidence that McCullough ever asserted an adverse claim. He relies primarily on the lack of any affirmative testimony stating that McCullough was asserting an adverse claim. We are not moved by Doll's argument. Tax bills and receipts entered into evidence show that McCullough and his predecessors in title paid taxes on both the .45- acre tract and the .678-acre tract, treating the two as a single property, dating back as early as the 1960s. In 1988, McCullough advertised both tracts for sale as a single piece of property. Moreover, continuous paths, rockwork, and terracing going from the upper .678-acre tract down

---

[9] Section 16.023 of the civil practice and remedies code provides: "To satisfy a limitations period, peaceable and adverse possession does not need to continue in the same person, but there must be privity of estate between each holder and his successor." *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.023 (West 2002).

through the lower .45-acre tract indicate an assertion of ownership by treating the two tracts as a single property.

The use to which land is best adapted is the type of use required to establish title through adverse possession. *See Carter v. Ruth*, 275 S.W.2d 126, 131 (Tex. Civ. App.—Beaumont 1955, no writ); *Moran v. Moseley*, 164 S.W. 1093, 1094 (Tex. Civ. App.—Austin 1914, no writ). The record contains legally and factually sufficient evidence that the Smiths and their predecessors in title treated the two tracts as a single property, paid taxes on the whole parcel, used the lower lakefront tract for recreational purposes and thereby asserted an adverse claim to the .45-acre tract for the required ten-year period. We overrule Doll's seventh point of error.[10]

In his eighth point of error, Doll argues that the trial court erred by failing to include in its adverse-possession jury instructions the elements of exclusive and continuous possession. We review a trial court's refusal to submit a jury instruction under an abuse of discretion standard. *See Thomas v. Oldham*, 895 S.W.2d 352, 360 (Tex. 1995). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner, or without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). This Court may not reverse for abuse of discretion merely because we may disagree with the decision of the trial court. *Id.* at 242. The rules of civil procedure require a trial court to "submit such instructions and definitions as shall be proper to enable the jury to render a verdict." Tex. R. Civ. P. 277. The trial

---

[10] Having determined that there is sufficient evidence to support the jury's finding that the Smiths acquired title to the disputed tract under the ten-year statute, we need not address Doll's sixth point of error challenging the jury's finding that the Smiths acquired title to the tract under the five-year statute. Nor do we need to address the homeowners' third point of error asserting that the jury's failure to find that the Smiths acquired the tract by deed was against the great weight and preponderance of the evidence.

12

court is given wide latitude to determine the propriety of explanatory instructions and definitions. *H.E. Butt Grocery Co. v. Bilotto*, 985 S.W.2d 22, 23 (Tex. 1998). Parties are not entitled to have every single statement of law which might be helpful to their case submitted to the jury as an instruction or definition. *General Res. Org. v. Deadman*, 907 S.W.2d 22, 30 (Tex. App.—San Antonio 1995, writ denied).

The court's charge tracked the language of the adverse-possession statute, asking whether the Smiths and those under whom they claim held the land by peaceable and adverse possession, and defining "peaceable possession" as "possession of real property that is continuous and is not interrupted by an adverse suit to recover the property" and "adverse possession" as "actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." We note initially that a requirement that the adverse possession be "continuous" is included in the court's definition of "peaceable possession." However, the court's charge does not explicitly state that the adverse possession must be "exclusive." Doll claims that this omission rises to the level of an abuse of discretion. We disagree.

In an early case discussing the exclusivity requirement the supreme court has stated:

> An adverse possession, in order to ripen into title, must be exclusive,— that is, the claimant must hold possession of the land for himself, as his own, and not for another. That which tends to prove the exclusiveness of a possession differs in no material respect from that which goes to prove the other elements of an adverse holding. Indeed, "exclusive possession" simply means that the disseisor must show an exclusive dominion over the land and an appropriation of it to his own use and benefit.

*Carter v. Holmes*, 113 S.W.2d 1225, 1226 (Tex. 1938) (quoting 1 Am. Jur. *Adverse Possession* § 140 (1936)). The trial court could have concluded that the exclusivity requirement was fairly

13

encompassed by the notion of appropriation contained in the statutory definition of adverse possession. *Cf. Terrill v. Tuckness*, 985 S.W.2d 97, 110 (Tex. App.—San Antonio 1998, no pet.) ("Adverse possession isn't about who uses the property more or for better purposes; it's about whether one party ousts another from his legally held land. In other words, exclusive possession is required."). Where, as here, liability is asserted based upon a provision of a statute or regulation, the court's charge should track the language of the provision as closely as possible. *See Spenser v. Eagle Star Ins. Co.*, 876 S.W.2d 154, 157 (Tex. 1994). In this case, the trial court followed the language of the statutes precisely. We cannot say that in doing so it acted without reference to guiding rules or principles. *Cf. Green v. Blanks*, 342 S.W.2d 141, 143-44, 147 (Tex. Civ. App.—Austin 1960, writ ref'd n.r.e.) (submission to jury tracking statutory language of predecessor to current adverse-possession statute "was a proper method of submitting the question"). We overrule Doll's eighth point of error.

### *Injunctive Relief*

At the conclusion of the trial, the court enjoined Doll from preventing or unreasonably interfering with the homeowners' non-exclusive right to use the beach for "recreational activities such as fishing, sunbathing, picnicking, camping, and boat launching." It also enjoined Doll from "erecting, constructing or placing a fence or barrier of any type on the [b]each [p]roperty between [the homeowners'] properties and the waters of Lake Travis" and ordered Doll to immediately "remove the fence poles and all concrete and debris associated therewith, which are situated on the beach property . . . [and to] restore the [b]each [p]roperty . . . to the same condition that existed prior to the construction of the fence." The court also enjoined the homeowners from preventing or

14

unreasonably interfering with [Doll's] non-exclusive use of the beach property. Doll apparently believes that he still has the right to erect his fence and challenges the trial court's order that he remove the fence poles, claiming that "[t]he issue of whether or not Doll's intention to erect a fence with gates was an unreasonable interference with the rights of the [homeowners'] . . . of ingress and egress to the waters of Lake Travis was an issue for the jury." In their appeal, the homeowners claim that the injunction prohibiting them from unreasonably interfering with Doll's non-exclusive use of the beach property is vague and is not based on the evidence.

The grant or refusal of a permanent injunction is ordinarily within the trial court's sound discretion. On appeal, review of the trial court's decision is limited to the question of whether the court's grant of injunctive relief constituted a clear abuse of discretion. *South Texas College of Law v. Texas Higher Educ. Coordinating Bd.*, 40 S.W.3d 130, 139 (Tex. App.—Austin 2000, pet. denied); *Risk Managers Int'l, Inc. v. State*, 858 S.W.2d 567, 569-70 (Tex. App.—Austin 1993, writ denied).

Although a party to an equitable action has the right to a trial by jury, only ultimate issues of fact are submitted for jury determination. The jury does not determine the expediency, necessity, or propriety of equitable relief. *Shields v. State*, 27 S.W.3d 267, 272 (Tex. App.—Austin 2000, no pet.); *State v. Texas Pet Foods, Inc.*, 591 S.W.2d 800, 803 (Tex. 1979). The decision to grant an injunction based on ultimate issues of fact found by the jury is for the trial court itself exercising its chancery powers. *Shields*, 27 S.W.3d at 272; *Texas Pet Foods*, 591 S.W.2d at 803. The jury's findings on issues of fact are binding; however, equitable principles and the appropriate relief to be afforded by equity are only to be applied by the court itself. *See Shields*, 27 S.W.3d at

15

272. Because the court alone fashions equitable relief, it is not always confined to the literal findings of the jury in designing the injunction. *Id.*

The jury found that the homeowners had the right to use the beach property for recreational purposes. It was the court's role to grant and fashion injunctive relief in support of this finding. Because the order requiring Doll to remove his fenceposts is undoubtedly a remedy based on the ultimate findings of the jury, we cannot say that the court abused its discretion in issuing the injunction. Doll's ninth point of error is overruled.

The homeowners' argument in their first point of error is slightly different. They claim that the injunction prohibiting them from unreasonably interfering with Doll's right as the fee owner of the beach property is based on legally and factually insufficient evidence and is vague, overbroad, and in conflict with their recreational easement rights. Whether there is evidence to support the issuance of the injunction is, of course, relevant to the issue of whether the trial court abused its authority in granting it. *See Beaumont Bank v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). However, the record does contain evidence that Doll and the homeowners had been involved in several altercations over the use of the property, that Cain Hurst or her guests may have removed or damaged Doll's fence posts and survey stakes, and that Cain Hurst's guests may have exposed themselves to Doll's children at one time. The court's injunction was not issued without an evidentiary basis.

Nor do we find the injunction to be overly vague or in conflict with the homeowners' rights. An easement gives a dominant right over the servient land, in this case the beach property, to the extent necessary for the enjoyment of the easement. *See Stout v. Christian*, 593 S.W.2d 146, 150 (Tex. Civ. App.—Austin 1980, no writ) (quotation omitted). The dominant owners, in this case

16

the homeowners, must make reasonable use of their rights so as to not unreasonably interfere with the rights of the servient owner, Doll. *See id.* As the fee simple owner of the servient estate, Doll may use his property in the same manner as any other fee simple property owner, subject only to the homeowners' dominant right to use the beach for recreational purposes. The injunction is neither vague nor overbroad; it simply requires that the homeowners not exceed their recreational easement rights and not interfere with Doll's rights in the beach property. The record evidence reveals a great deal of animosity between Doll and the homeowners, particularly Cain Hurst. The court did not abuse its discretion by concluding that cross injunctions were needed to prohibit the parties from interfering with one another in the lawful use of their property. We overrule the homeowners' first point of error.[11]

**Trespass**

In their fourth point of error, the homeowners claim that there is no evidence or factually insufficient evidence to support the jury's failure to find that Doll had trespassed on the Smiths' land in the process of clearing a path across their property to the lake. A challenge to the legal sufficiency of the evidence by a party who has the burden of proof at trial will be sustained only

---

[11] In their second point of error, the homeowners claim that the trial court abused its discretion by failing to include in its judgment certain conclusions of law, including that "the easements and rights of [the homeowners and] their . . . successors and assigns regarding the use of the [b]each [p]roperty . . . run with the land and are appurtenant to [the homeowners'] properties," and that "[the homeowners'] properties are the dominant estate, and the [b]each [p]roperty owned by [Doll] is the servient estate." We disagree. The judgment itself provides that the homeowners as well as their "successors and assigns" are entitled to use the beach property for recreational purposes—indicating the appurtenant nature of the easements granted. *See McDaniel v. Calvert*, 875 S.W.2d 482, 484 (Tex. App.—Fort Worth 1994, no writ); *cf. Davis v. Skipper*, 83 S.W.2d 318, 321-22 (Tex. 1935) (equitable servitude cannot exist without a benefitted estate in land); *Reagan Nat'l Adver. v. Capital Outdoors, Inc.*, 96 S.W.3d 490, 495-96 (Tex. App. Austin—2002, pet. filed) (same). We overrule the homeowners' second point of error.

when the record contains no evidence to support the jury's adverse finding and conclusive evidence establishing a contrary proposition. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241-42 (Tex. 2001). A challenge to the factual sufficiency of the evidence by a party who has the burden of proof at trial will be sustained only if the adverse finding is so against the great weight and preponderance of the evidence that it is clearly unjust. *Id.* We review a "failure to find" under the same standard as we review jury findings. *See Cropper v. Caterpillar Tractor Co.*, 754 S.W.2d 646, 647 (Tex. 1988). The trial court instructed the jury that:

> In determining whether a trespass has been committed, you are instructed that a "trespass" is any act which exceeds or passes beyond the bounds of any rights which have been legally granted. For example, where one enters another's property under the authority of an expressed or conditional right but exceeds the expressed or conditional right, that person becomes a trespasser as to such unauthorized actions. A conditional or restricted consent to enter land creates a privilege to do so only insofar as the condition or restriction is complied with.

*See Murphy v. Fannin County Elec. Coop.*, 957 S.W.2d 900, 903-04 (Tex. App.—Texarkana 1997, no pet.) (identical instruction proper). The jury was also instructed that "in determining the question of trespass, you are instructed that the owner of an easement may use the easement to the limits . . . contained in the grant . . . [and] the owner of an easement may prepare and improve it to an extent reasonably calculated to promote the purpose for which it was created." *See Baer v. Dallas Theater Ctr.*, 330 S.W.2d 214, 219 (Tex. Civ. App.—Waco 1959, writ ref'd n.r.e.) (citations omitted).

As mentioned above, the deed from Brill Jr. to the Smiths' predecessors in title states "there is reserved hereby to the grantors herein, their heirs and assigns, an easement 20 foot in width along the west line of said tract . . . for the purpose of going to and from the above reserved roadway to the waters of Lake Travis." Doll bulldozed a path from an area road through the Smiths' property

18

to the lakeshore in order to clear the easement. At trial, Preston Smith testified that Doll's path went "out of the easement limits," and that the path was passable by foot before Doll cleared it. The Smiths also introduced photographs depicting the path Doll had cleared, some showing that trees had been cut down.[12] Doll testified that he "stayed well within [the] 20 feet of the easement," and that prior to clearing the land, he could not have walked across the easement.

Making all inferences in favor of the verdict, as we must, we cannot say that there is no evidence supporting the jury's failure to find that Doll had trespassed on the Smiths' land in the process of clearing his easement; nor can we say that the Smiths conclusively established a contrary proposition. The evidence is legally sufficient. Moreover, after reviewing all the evidence, we cannot say that the jury's failure to find in favor of the Smiths is so against the great weight and preponderance of the evidence as to be clearly unjust. The jury was entitled to believe Doll's testimony that he needed to clear the easement in order to make it passable and that he did not clear any land outside the easement boundaries. *See Trinity Indus., Inc. v. Ashland, Inc.*, 53 S.W.3d 852, 862 (Tex. App.—Austin 2001, pet. denied) ("the jury is the sole judge of the credibility of witnesses and is entitled to accept or reject any testimony it wishes, as well as to decide what weight to give the testimony"). We overrule the homeowners' fourth point of error.[13]

---

[12] Doll testified that he did not cut any trees down on the easement, but did allow "brush, trees, and whatever" from clearing done at nearby construction sites to be pushed onto "[his] property."

[13] The homeowners also claim in this point of error that the trial court abused its discretion by instructing the jury that "[i]n determining the question of trespass, you are instructed that the owner of an easement may prepare and improve it to an extent reasonably calculated to promote the purpose for which it was created." We cannot say that this instruction is unreasonable, arbitrary, or made without reference to any guiding rules or principles. *See, e.g.*, *Baer v. Dallas Theater Ctr.*, 330 S.W.2d 214, 219 (Tex. Civ. App.— Waco 1959, writ ref'd n.r.e.).

*Attorney's Fees*

In their fifth point of error, the homeowners claim that the trial court erred in failing to award them their attorney's fees in connection with their declaratory-judgment claims. Section 37.009 of the civil practice and remedies code provides: "In any proceeding under this chapter, the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997). A prevailing party in a declaratory-judgment action is not entitled to attorney's fees simply as a matter of law; entitlement depends upon what is equitable and just and the trial judge's power is in that respect discretionary. *McCarthy Bros. Co. v. Continental Lloyds Ins. Co.*, 7 S.W.3d 725 (Tex. App.—Austin 1999, no pet.) (quotation omitted). We will not reverse a trial court's decision regarding whether to award attorney's fees absent an abuse of that discretion. *Id.* Reversal for an abuse of discretion in these circumstances is justified only when the trial court's decision was arbitrary and unreasonable. *Id.* (quotation omitted).

The homeowners did prevail in their counterclaims to establish easements across the beach property. However "the award of attorney's fees in declaratory-judgment actions is clearly within the trial court's discretion and is not dependent on a finding that a party 'substantially prevailed.'" *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996). Because the jury failed to find Doll guilty of any actionable wrong, and only encumbered his property by various easements, it was within the trial court's discretion to determine that awarding the homeowners their attorney's fees would not be equitable and just.[14] *Cf. Sunday*

---

[14] The homeowners spend much of their brief arguing that the trial court erred in concluding that an award of attorney's fees to the homeowners would run afoul of the rule that a party may not use a counterclaim seeking a declaratory judgment resolving disputes already pending before the court as a vehicle for the recovery of attorney's fees. *See Thomas v. Thomas*, 902 S.W.2d 621, 626

*Canyon Prop. Owners Ass'n v. Annett*, 978 S.W.2d 654, 659 (Tex. App.—Amarillo 1998, no pet.) (no abuse of discretion in failing to award either side attorney's fees when court could conclude that both parties had legitimate rights to pursue).  We overrule the homeowners' fifth point of error.

## CONCLUSION

The evidence establishing the homeowners' rights to use the beach property for recreational purposes is legally and factually sufficient, as is the evidence that the Smiths acquired title to the disputed .45-acre tract of land by adverse possession, and the evidence that Doll is not liable to the Smiths for trespass.  The court did not abuse its discretion in granting injunctive relief to all parties or in declining to assess attorney's fees.  Having overruled all points of error necessary to dispose of this appeal, we affirm the trial court's judgment in all respects.

_____

Bea Ann Smith, Justice

Before Chief Justice Law, Justices B. A. Smith and Puryear

Affirmed

Filed:   August 14, 2003

_____

(Tex. App.—Austin 1995, writ denied); however, the court's findings and conclusions clearly make this an alternative rationale, "in addition to" its discretionary determination of the equities, for failing to award the homeowners their attorney's fees and we therefore do not address it.  The same is true of the court's conclusion that the homeowners cannot recover their attorney's fees for defense of Doll's claims.