**G. E. LEHMANN et al., Appellants,**

v.

**H. C. WALLACE et ux., and Parker P. Hanna et ux., Appellees.**

**No. 15262.**

Court of Civil Appeals of Texas, San Antonio.

April 24, 1974.

Rehearing Denied May 22, 1974.

Lavern D. Harris, Ronald R. Winfrey, Kerrville, for appellants.

Edward G. Marion, Jr., Gordon L. Hollon, Joseph W. Burkett, Jr., Kerrville, for appellees.

KLINGEMAN, Justice.

This is a suit for declaratory judgment and injunctive relief brought by H. C. Wallace and wife, Emalene, and Parker P. Hanna and wife, Mary, against appellants herein, G. E. Lehmann, Gordon H. Monroe, Walter R. Richardson and wife, Opal, and Glen Oaks Building Board, in which suit appellees ask the court to find and declare the relative rights, duties and liabilities of the parties and to interpret and construe the restrictions and deeds conveying property in an area referred to as Glen Oaks No. One, a subdivision near Kerrville, in Kerr County, Texas, and to enjoin the violation of such restrictions. Trial was to the court without a jury, and judgment was entered by the trial court construing the restrictions favorably to appellees and perpetually enjoining appellants from violating such restrictions and specifically that portion of such restrictions which state that not more than one primary residence shall be constructed on any one tract in Glen Oaks. The trial court made extensive findings of fact and conclusions of law.[1]

1. The pertinent portions of such findings of fact may be summarized as follows:

(a) Defendants, G. E. Lehmann and Gordon H. Monroe, made a subdivision known as Glen Oaks No. One out of a larger tract of land owned by them; on April 25, 1967, such defendants had a plat of Glen Oaks No. One prepared, which plat designated a total of 35 lots in said subdivision; that such defendants sold properties in Glen Oaks No. One in reference to said plat and the purpose of said plat was to subdivide said property;

(b) On April 14, 1967, defendants, G. E. Lehmann and Gordon H. Monroe, conveyed to H. C. Wallace and wife, Emalene Wallace, Tracts 13, 14 and 15 in Glen Oaks No. One by warranty deed, with attached restrictions; that said restrictions state that the purpose thereof is to carry out a general plan of development of Glen Oaks, maintain the suitability of Glen Oaks for private residential purposes, and to carry out a general plan for the protection, benefit, use, recreation and convenience of each and every purchaser of a tract or parcel of land in Glen Oaks and to enhance the value of said tracts; the restrictions further provide, among other things, that not more than one primary residence shall be constructed on any one tract in Glen Oaks.

(c) On April 14, 1967, G. E. Lehmann and Gordon H. Monroe also executed an affidavit to H. C. Wallace et ux., in which they covenanted and agreed to attach, include and incorporate in each and every conveyance made after such date of any tract of the property presently known as Glen Oaks No. One, the identical restrictions, covenants and conditions as are set out and incorporated in such instrument and in the deed from Gordon H. Monroe et al. to H. C. Wallace et ux. Said affidavit further provides that the covenants, restrictions and conditions therein made are to run with each tract of land comprising Glen Oaks No. One and are binding on the heirs, successors and assigns of all and each of the undersigned and all persons claiming under them;

(d) That the defendants, Lehmann and Monroe, on December 16, 1970, in violation of said restrictions re-subdivided Tract No. 12 and conveyed to W. R. Richardson et ux. one-half of Tract No. 12, designated as Tract 12–A; and on the same day, such defendants also conveyed to W. R. Richardson et ux. the other one-half of Tract 12, designated as Tract 12–B; that defendants Richardson et ux. constructed a residence on Tract 12–B and are contemplating building another residence on the other half of Tract 12, designated as Tract 12–A; that the conveyance by defendants Lehmann and Monroe to defendant Richardson et ux. represents an attempt to re-subdivide tracts in Glen Oaks No. One in violation of the subdivision restriction; that defendants Lehmann and Monroe specifi-

By three points of error, appellants assert that the trial court erred: (1) in holding that the restrictions in question in this suit, as contained in the deeds in the chain of title to appellees' property and an agreement to appellees (Wallaces) prohibits re-subdivision of the tracts other than as shown in a map shown as Plaintiffs' Exhibit No. 2; (2) in construing the restrictions in question as prohibiting re-subdivision and prohibiting the construction of but one primary residence on each of the 35 tracts or parcels of land shown on the map marked Plaintiffs' Exhibit No. 2; (3) in failing to hold that any restriction, plan or scheme of development or use of land, in order to be enforceable, must be in writing.

Plaintiffs are the owners of lots or tracts in Glen Oaks No. One, a subdivision near Kerrville, Texas. Defendants W. R. Richardson and wife, Opal Richardson, are the owners of a tract or tracts in said subdivision, plaintiffs asserting that they own only one tract, Tract No. 12, and defendants asserting that they own two tracts, Tract No. 12–A and Tract No. 12–B. Defendants G. E. Lehmann and Gordon H. Monroe are the developers of Glen Oaks No. One, which subdivision was carved and cut out of a larger tract owned by said developers. Defendant Glen Oaks, Building Board is composed of G. E. Lehmann and Gordon H. Monroe.

On April 14, 1967, defendants Lehmann and Monroe conveyed to plaintiff H. C. Wallace and wife, Emalene Wallace, Tracts Nos. 13, 14 and 15 in Glen Oaks No. One, which tracts are also described by metes and bounds. The deeds of conveyance to the Wallaces have attached restrictions thereto which state that in order to ·carry out a *general scheme of development of Glen Oaks* (emphasis added), maintain the suitability of Glen Oaks for private residential purposes, and to carry out a general plan for the protection, benefit, use, recreation and convenience of each and every purchaser of a tract of land therein and to enhance the value of said tracts of land in Glen Oaks, said deed is subject to the covenants therein. Among other things, said restrictions provide that "not more than one primary residence shall be constructed on any one tract in Glen Oaks." Said restrictions further provide

---

cally represented to Wallace and other purchasers in Glen Oaks No. One that they could not construct more than one primary residence on any one total tract in said subdivision; that the defendants, Lehmann and Monroe, by ways of private advertising, a copy of which was introduced into evidence, represented that houses built in Glen Oaks area must be at least 1200 square feet, and that only one residence was to be placed on a tract; that the defendants had Tract 12 resubdivided so that they could circumvent the restrictions and construct two residences on Tract 12.

(e) That on the 11th day of June, 1969, plaintiff Parker E. Hanna and wife, Mary E. Hanna, purchased Tract 34 in said subdivision subject to the restrictions here involved; that the defendant G. E. Lehmann, during the trial stated that he still deems that he has the right to re-subdivide as many tracts in the Glen Oaks subdivision as he desires; that one of the purposes of such subdivision was to stop any re-subdivision of said tracts in said subdivision, which was accomplished by putting in the provision that there could not be more than one primary residence per tract; that defendant Monroe testified at the trial

that no more than one primary residence had been constructed on any of the 35 tracts as set out in the map of said subdivision.

In its conclusions of law, the court found, among other things: (a) the restrictive covenants here involved and as contained in the deed from Lehmann and Monroe to H. C. Wallace et ux. and as contained in the affidavit are valid and enforceable restrictions; (b) that the defendants are bound by such restrictions and covenants together with all property owners owning property in said subdivision; (c) that such restrictive covenants are imposed for the benefit of the grantors, and of all of the property owners of Glen Oaks No. One; (d) that the material provisions of these restrictive covenants evidence a general plan or scheme for the development of the subdivision; (e) that Glen Oaks consists of only 35 tracts as platted, and that said restrictions expressly require only one primary residence for residence purposes per platted tract; (f) that plaintiff should have a declaratory judgment declaring that not more than one primary residence shall be constructed on any one tract in Glen Oaks No. One, a subdivision consisting of 35 tracts only.

that such covenants, restrictions and conditions are to run with the land and are to be enforceable by injunction and any other remedy provided by law, by said Building Board or any person who shall own any tract or parcel of land in Glen Oaks.

On the same date, Lehmann and Monroe, individually and acting for the Glen Oaks Building Board, executed an affidavit and agreement to H. C. Wallace and wife in which they covenanted and agreed to attach, include and incorporate in each and every conveyance made after such date of any tract of land out of the property presently known as Glen Oaks No. One, consisting of approximately 35 tracts, the identical restrictive covenants and conditions as are incorporated in this instrument and in the deed executed by the undersigned to H. C. Wallace and wife, Emalene Wallace. Said instrument further provides that the covenants, restrictions and conditions therein are to run with each tract of land and are binding on the undersigned, their heirs and assigns and all persons claiming under them.

A map or plat of Glen Oaks No. One was introduced into evidence as Plaintiffs' Exhibit No. 2, which plat shows a total of 35 lots or tracts in said subdivision, including Tracts Nos. 13, 14 and 15. The plat is certified to by a surveyor and in addition to showing each tract number, shows the size of each tract, both by acreage and by distances and calls. This plat is not filed of record.

On December 16, 1970, several months after the conveyance to the Wallaces, Lehmann and Monroe conveyed to W. R. Richardson and wife, Opal Richardson, a tract designated as Tract 12–A, which is also described by metes and bounds, and which is one-half of Tract No. 12 shown on the map or plat aforesaid and, on the same date, also conveyed to the Richardsons a tract designated as Tract 12–B, which is the other one-half of Tract 12.

Sometime thereafter, the Richardsons constructed a residence on Tract 12–B, and there is evidence that they told plaintiffs Wallace and Hanna that they were going to construct another residence on Tract 12–A; that they had a right to do so because these were two separate tracts.

Plaintiffs Parker P. Hanna and wife purchased Tract No. 34 from Charles E. Boyd and wife, who had purchased such tract from Lehmann and Monroe, both of which deeds contained a copy of the restrictions here involved.

H. C. Wallace testified that during the negotiations for the purchase of the property, Lehmann and Monroe told him that regardless of the size of the tract, only one residence could be built on any one tract, and there is testimony that other purchasers were also told the same thing.

There is testimony that not all the deeds in such subdivision have the map relied on by plaintiffs attached thereto, but appellants concede in their brief that 73 per cent of the deeds executed by Lehmann and Monroe up to the time of the trial had maps like Plaintiffs' Exhibit No. 2 attached to such deeds.

Defendant Monroe testified at the time of the trial that no more than one primary residence had been constructed on any one of the 35 tracts as shown in Plaintiffs' Exhibit No. 2.

Appellants' basic contentions are that (a) the map or plat relied on by appellees is only a planning map and was never recorded, (b) such map or plat was ineffective to prevent appellants from re-subdividing or changing the size of lots held by them, (c) that although many of the deeds refer to a tract by tract number, they were actually sold by metes and bounds descriptions, (d) that the restrictive covenants are binding on and limit only the grantee of a particular deed, and do not apply to the grantor or subdivider; (e) that in any event, the restrictive covenants were not violated because only one residence had been built or is being contemplated to be built on the lots in question, to-wit: one on

Lot 12–A and one on Lot 12–B; (f) that the trial court erred in refusing to apply the statute of frauds to the restrictions in question.

■ Restrictive clauses in instruments concerning real estate must be construed strictly, favoring the grantee and against the grantor, and all doubts should be resolved in favor of the free and unrestricted use of the premises. Baker v. Henderson, 137 Tex. 266, 153 S.W.2d 465, 470 (1941); Settegast v. Foley Bros. Dry Goods Co., 114 Tex. 452, 270 S.W. 1014, 1017 (1925); Johnson v. Linton, 491 S.W.2d 189, 197 (Tex.Civ.App.—Dallas 1973, no writ).

■ Generally, the mere filing of a map which depicts lots, but which has no declaration thereon which restricts the size of lots, is not a prohibition upon re-subdividing into smaller lots. MacDonald v. Painter, 441 S.W.2d 179 (Tex.1969); Turner v. Glenn, 220 N.C. 620, 18 S.E.2d 197 (1942). The view taken in most cases is that, in the absence of a general plan of development, there is no implied covenant as to the size of or against further subdivision of the remaining lots shown on a map with reference to which the conveyance is made. 20 Am.Jur.2d, Covenants, Section 174 (1965); 57 A.L.R. 764, Anno.—Implied Covenant—Size of Lots, Section 14 (1928).

It is to be noted that appellees are not relying solely on the map or plat of April 25, 1967 (Plaintiffs' Exhibit No. 2). In addition to such map, they rely on (a) the restrictive covenants, hereinbefore discussed, which are contained not only in the deeds to plaintiffs, the deeds to defendants Walter R. Richardson and wife, Opal Richardson, but in numerous other deeds introduced into record to the various grantees in the subdivision; (b) the agreement and affidavit executed by defendants Lehmann and Monroe on April 14, 1967, to plaintiff Wallace and wife, hereinbefore discussed; (c) evidence that the developers used such plat (Plaintiffs' Exhibit No. 2)

to show the properties to prospective purchasers and made sales thereon; (d) evidence of oral representations made by Lehmann and Monroe to plaintiffs and others that they could build only one primary residence on any one tract; (e) the printed advertisement introduced into evidence as Plaintiffs' Exhibit No. 16 that houses built in Glen Oaks must contain at least 1200 square feet, and that only one dwelling was to be placed on a tract.

■ One of the most common forms of imposing building restrictions is by the establishment of a general building plan of improvements or development covering a tract divided into a number of lots. Such a plan may be established in various ways, such as by express covenant, by implication from a filed map, or by parol representations made in sales brochures, maps, advertising, and oral statements on which the purchaser relied in making his purchase. it is said that the most complete way is by reciprocal covenant, whereby the grantor covenants to insert like covenants in all deeds out of the common development, and that other ways may consist of the grantor selling the lots upon representations to the individual purchasers that like covenants will be inserted in the grantor's deeds to others, for the common benefit, or the grantor pursuing a course of conduct indicating a neighborhood scheme, leading the several purchasers to assume its adoption and adherence to it by such conduct. The most common test of the existence of a general building or neighborhood scheme is an intent that the protection of the restrictive covenant inure to the benefit of the purchasers of the lots in the tract. Such an intent is said to arise from representations as to the restrictions made for the purpose of inducing the purchaser of the several lots to pay higher prices because of the restrictions. Am.Jur.2d, Covenants, Section 175 (1965).

■ The doctrine has often been announced in this state and by courts the country over that where the owners of a

tract subdivide it and sell distinct parcels thereof to separate grantees, imposing restrictions upon its use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against any other grantee, either upon the theory that there is a mutuality of covenants and consideration, or upon the ground that mutual negative equitable easements are created. Where parcels are sold with reference to such a uniform plan to persons having notice thereon, the grantees may enforce the restrictions within this rule, irrespective of the order of the several conveyances and irrespective of whether the covenants run with the land. Monk v. Danna, 110 S.W.2d 84 (Tex.Civ. App.—Dallas 1937, writ dism'd). The Supreme Court in Curlee v. Walker, 112 Tex. 40, 244 S.W. 497 (1922), had before it a case involving a restriction in which one of the restrictions was that for 10 years from the date of purchase, the purchaser would build only one house on two lots and that not less than two lots per sale were to be sold. This limitation was to be placed in each deed of purchase. The Supreme Court held that this, together with other provisions, made up and created a "general scheme or plan" under which all the lots in such restricted area were to be sold; that this scheme or plan was advertised in the city of Wichita Falls and each purchaser and especially the parties to this suit, had knowledge of it and bought in contemplation thereof. The Court said "it is perfectly clear that it is lawful for districts with restrictions of this nature to be created, and also that each purchaser has the right to rely on and to enforce those restrictions." [2]

■ The entire record evidences that a general plan or scheme for the development of Glen Oaks No. One had been adopted. Such general plan was for the material benefit of all the parties and inured to the benefit of both the purchasers and the sellers. The intent and purpose of such plan was to make the subdivision more attractive for residential purposes and to enhance the value of the tracts in Glen Oaks. This was an inducement to the purchasers in purchasing property in

2. The Supreme Court stated that the correct rules that govern covenants of this character are set out in Hooper v. Lottman, 171 S.W. 270 (Tex.Civ.App.—El Paso 1914, no writ), as follows:

"The most familiar cases in which courts of equity have upheld the right of owners of land to enforce covenants to which they were not parties are those in which it has appeared that a general building scheme or plan for the development of a tract of land has been adopted, designed to make it more attractive for residential purposes by reason of certain restrictions to be imposed on each of the separate lots sold. This forms an inducement to each purchaser to buy, and it may be assumed that he pays an enhanced price for the property purchased. The agreement therefore enters into and becomes a part of the consideration. The buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots. The covenant or agreement between the original owner and each purchaser is therefore mutual. The equity in this particular class of action is dependent as much on the existence of the general scheme of improvement or development as on the covenant, and restrictions which contemplate a general building plan for the common benefit of purchasers of lots are recognized and enforced by courts of equity at the instance of the original grantor or subsequent purchasers. So the general rule may be safely stated to be that where there is a general plan or scheme adopted by the owner of a tract, for the development and improvement of the property by which it is divided into streets and lots, and which contemplates a restriction as to the uses to which lots may be put, or the character and location of improvements thereon, to be secured by a covenant embodying the restriction to be inserted in the deeds to purchasers, and it appears from the language of the deed itself, construed in the light of the surrounding circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject thereto, and to have the benefit thereof, and such covenants are inserted in all the deeds for lots sold in pursuance of the plan, a purchaser and his assigns may enforce the covenant against any other purchaser, and his assigns, if he has bought with actual or constructive knowledge of the scheme, and the covenant was part of the subject-matter of his purchase."

**682**

said subdivision and was relied upon by the purchasers of such property. The covenants and agreements between the original owner and each purchaser was mutual.

■ One of the contentions of appellant is that the restrictive covenants here are binding only upon the grantee of a deed to a respective tract and do not bind the developer, and that the developer is free to subdivide the lots and change the size of lots that he owns. We find no merit in such contention. It is manifestly unfair and contrary to the intent of the parties. If the purchaser could not re-subdivide his tract and could build only one primary residence, and the developer could re-subdivide any tract that he owns into two, three, four or as many lots as he desires, with each lot being entitled to build one primary residence thereon, the effect would be to violate and destroy the general scheme of development which was for the mutual benefit of all the parties.[3]

■ The trial court did not err in refusing to apply the statute of frauds to the restrictions in question. Defendants filed only a general denial and did not affirmatively plead the statute of frauds. Rule 94, Texas Rules of Civil Procedure (1967). Our Supreme Court in First National Bank in Dallas v. Zimmerman, 442 S.W.2d 674 (Tex.1969), said: " . . . as will be discussed below, Rule 94, Texas Rules of Civil Procedure, requires that if the Statute of Frauds is to be interposed as a defense, it must be affirmatively pleaded. . . . Given this background and the plain and direct wording of Rule 94, it is our opinion that a party waives his right to assert the Statute of Frauds as a defense if he does not plead it. An objection to the evidence will not suffice."

■ Moreover, the restrictive covenants here involved: the affidavit and agreement, executed by Lehmann and Monroe on April 14, 1969; and the map exhibited as Plaintiffs' Exhibit No. 2, all of which plaintiffs rely on, are in writing.

The trial court's material findings of fact are sufficiently supported by the record and form a sufficient basis for the judgment entered. All appellants' points of error have been considered and all are overruled.

The judgment of the trial court is affirmed.

---

3. Plaintiffs also rely on the agreement and affidavit made by Lehmann and Monroe on April 14, 1967, to Wallace in which they covenant and agree to place the restrictions here involved in every deed of conveyance thereafter made of properties in Glen Oaks

No. One. One of the ways to establish a general scheme or plan of development is by a reciprocal covenant whereby the grantor agrees to insert like covenants and agreements in all deeds out of the common development.