**AFFIRM in Part, and REVERSE and REMAND in Part; Opinion Filed January 21, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-00099-CV

**WILLIAM DREXEL AND SANDY DREXEL, Appellants**
**V.**
**TOLL BROTHERS, INC. AND TOLL DALLAS TX LLC, Appellees**

**On Appeal from the 296th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 296-03255-2012**

## MEMORANDUM OPINION

Before Justices Schenck, Osborne, and Reichek
Opinion by Justice Schenck

On our own motion, we withdraw our opinion and vacate our judgment of August 28, 2019, and substitute this opinion in its place. Appellants, William and Sandy Drexel, appeal a final judgment, incorporating and restating the trial court's numerous rulings by interlocutory summary judgment, in a dispute over residential building covenants and restrictions in a development known as Avignon. The Drexels purchased a lot in Phase 2 of the development from Windhaven Development, Ltd. ("Windhaven") and built a patio home on their lot. Subsequently, Windhaven purchased property that would become Phase 3 of the development and conveyed the Phase 3 property to appellees, Toll Brothers, Inc. and Toll Dallas TX LLC (collectively "Toll"). Toll built estate homes in Phase 3, some of which abutted the Drexels' property. The Drexels' complaints center on second story rear windows of the estate homes that abut their property. They claim that,

in violation of the applicable covenants and restrictions, those windows have views directly into their backyard pool and spa area and master bedroom. In two issues, the Drexels claim the trial court erred in interpreting the documents that govern the development and in awarding Toll attorney's fees. We affirm in part, and reverse in part, the summary judgment. Because all issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

## BACKGROUND

In April 2005, Windhaven purchased 33.001 acres of unimproved land located in the City of Plano that would ultimately become Phase 1 of the Avignon development. In doing so, Windhaven executed a Special Warranty Deed with Vendor's Lien (the "2005 Deed") and, by an appendix, agreed that homes built on the property would be subject to certain architectural guidelines. For example, homes in the development had to conform to the French Country or European style, gutters were to be molded from copper or paint grip metal, and all front windows had to be finished wood casements or wood divided light windows.

In March 2006, Windhaven recorded a Declaration of Covenants, Conditions and Restrictions for Avignon ("2006 Declaration"). The 2006 Declaration expressed Windhaven's intent to develop the land as a single-family residential subdivision consisting of ninety-nine patio homes, constituting Phase 1 of the Avignon development. Windhaven also recorded architectural design guidelines in connection with the 2006 Declaration that were consistent with the 2005 Deed.

The 2006 Declaration included a provision allowing Windhaven to amend the Declaration without the joinder or consent of any other party, "provided that any such amendment shall be consistent with and in furtherance of the general plan and scheme of development as evidenced by this Declaration and shall not impair or affect the vested property or other rights of any owner or his mortgagee." The 2006 Declaration also envisioned the acquisition of more property to expand the Avignon development:

–2–

. . . Declarant, in its sole discretion and without the approval of any other party, may from time to time subject this Declaration to additional real property by recording in the Real Property Records of Collin County, a Supplemental Declaration describing the additional real property to be subjected to this Declaration. Any such Supplemental Declaration which is executed by Declarant or its assignee and recorded in the Real Property Records of Collin County shall not require the consent or approval of any other Owner or other person in order to be fully enforceable and effective to cause such additional real property to be incorporated herein. Such changes in the covenants, conditions, and restrictions of this Declaration and the Bylaws as may be desired with reference only to the subsequent phase or phases may be included in the Supplemental Declaration. Nothing in this Declaration shall be construed to require Declarant or any successor of Declarant to subject additional real property to this Declaration.

In October 2008, while Phase 1 construction was underway, Windhaven acquired an additional 1.625 acres abutting Phase 1. That acquisition became Phase 2 of the Avignon development. The deed conveying that property (the "2008 Deed") subjected the property to the same written Architectural Guidelines as the 2005 Deed. Phase 2 was thus to be developed in the same manner as Phase 1. Specifically, the homes in Phase 2 would also be "patio homes," also known as zero-lot-line homes, in which the homes are built on or near at least one neighboring property line with minimal separation between residences.

In October 2009, Windhaven recorded an Amended and Restated Declaration of Covenants, Conditions and Restrictions for Avignon ("2009 Declaration"). The 2009 Declaration stated Windhaven's intent "to establish covenants, conditions and restrictions upon the Avignon Windhaven Property and each and every Lot contained therein, in order to maintain a general plan for the development." The 2009 Declaration described the supplemental declaration referenced in the 2006 Declaration's provision as: "a recorded instrument which accomplishes one or more of the following purposes: (i) subjects additional real property to this Declaration, or (ii) imposes, expressly or by reference, additional restrictions, covenants, easements and/or obligations on the land described." It also reiterated a set of window restrictions that appeared in the 2005 Deed and in the 2006 Declaration:

1. Second story windows shall be located so as to restrict views into adjacent windows and/or courtyards . . . .

2. Second story rear and side yard windows are restricted except on those Lots that back to a greenbelt or open area.

3. Second story clear windows are permitted on the restricted side provided that second story walkways, balconies, catwalks, etc. have limited or no impact to adjacent properties.

4. The window restrictions are intended to minimize and eliminate view encroachments.

5. Translucent windows to include glass block or other obscure window types will be considered on restricted elevations . . . .

In January 2010, the Drexels purchased a lot from Windhaven in Phase 2 of the Avignon development. Construction of their home was completed in September 2010.

In February 2011, Windhaven acquired by Special Warranty Deed (the "2011 Deed") roughly thirty-two acres of unrestricted and unimproved land adjacent to the Avignon development. Thus, this acquisition was not subject to any of the architectural guidelines that governed the Avignon development at that time. However, Windhaven recorded a Supplemental Declaration to the Amended and Restated Declaration of Covenants, Conditions and Restrictions for Avignon (the "2011 Declaration"), which encumbered the entirety of the land conveyed by the 2011 Deed. The 2011 Declaration established Architectural Guidelines applicable to Phase 3 only. In addition, in contrast to the development of zero-lot-line patio homes in Phases 1 and 2, Windhaven decided to develop Phase 3 into estate homes situated on lots twice the size of those in Phases 1 and 2. The Architectural Guidelines applicable to Phase 3 included the following window restrictions:

1. Second story rear windows are restricted on those Lots that back to Phase 2.

2. Second story clear windows are permitted on the restricted side provided such windows are on second story walkways, balconies, catwalks, etc. and such windows have limited or no visual impact to adjacent properties.

3. The window restrictions are intended to minimize and eliminate view encroachments.

–4–

4. Translucent windows to include glass block or other obscure window types will be considered on restricted elevations.

Thus, while Phases 1 and 2 were subject to five window restrictions, Phase 3 was subject to only four.

Toll subsequently purchased the land designated for Phase 3 from Windhaven. In 2012, Toll began building homes on the street that abuts the Drexels' property. Those homes had second-story rear windows that had clear glass and faced the Drexels' backyard.

In August 2012, the Drexels asserted claims against Toll for breach of the restrictive covenants, invasion of privacy, and sought declaratory and injunctive relief. In their breach of covenant claim, the Drexels specifically alleged: (1) they had contractual "privacy rights" arising from the covenants and restrictions established in the 2005 Deed, the 2006 Declaration, the 2009 Declaration, and the 2011 Supplemental Declaration; (2) the 2009 Declaration governed Phase 3 and Toll had violated the Restrictions in the 2009 Declaration and in associated documents setting forth the general plan for the development; (3) the Restrictions in the 2011 Supplemental Declaration were void as impermissible amendments to the 2009 Declaration—or, if not void, they applied in addition to the restrictions in the 2009 Declaration and were independently breached; (4) Toll had installed windows and other features in homes that backed to the Drexels' property that violated the Restrictions in the 2009 Declaration; and (5) the rear windows also violated the Window Restrictions in the 2011 Supplemental Declaration insofar as those restrictions operated independent of the 2009 declaration.

Toll answered, denied liability, and asserted a counterclaim under the Uniform Declaratory Judgment Act (UDJA), by which it asked the trial court to declare: (1) that the 2006 Declaration did not apply to any lot in Avignon; (2) that the Restrictions in the 2009 Declaration did not apply to Phase 3; (3) that only the Restrictions in the 2011 Supplemental Declaration applied to Phase 3;

–5–

and (4) that the rear-facing windows installed in the houses that backed to the Drexels' property did not violate the 2011 Supplemental Declaration.

The parties each filed a series of summary judgment motions, totaling fifteen in all. The first motion and cross motion addressed the applicability of the 2006 Declaration, the 2009 Declaration, and the 2011 Supplemental Declaration to Phase 3. The trial court concluded that Phase 3 was governed by the 2011 Supplemental Declaration only, and not by the general plan established in the 2006 or 2009 Declarations. Subsequently, the trial court granted Toll's motion for summary judgment as to the Drexel's claims for breach of the 2009 Declaration, all claims for equitable relief, all claims for declaratory judgment, and any claim that alleges violation of restrictions not contained in the 2011 Supplemental Declaration. Thereafter, the trial court found the phrase "second story rear windows" in Section 3(F)(2) of Exhibit E to the 2011 Supplemental Declaration meant "a window or set of windows located in a second story room on the rear elevation of a Phase 3 house," and not to an elevated window on a room on the ground floor. Further, the trial court found the term "restricted" in the window restriction provisions of the 2011 Supplemental Declaration to mean "a second story rear-window in a house that backs up to Phase 2 is permitted only if it has limited or no encroaching views of neighboring properties in its ordinary and expected use." Finally, the trial court declared the phrase "the window restrictions are intended to minimize and eliminate view encroachments" ambiguous.

The trial court found that the rear windows in the great rooms of the Phase 3 homes abutting the Drexels' home were not second-story rear windows and thus were not restricted under, nor in violation of, the 2011 Supplemental Declaration. The trial court also found that the rear circular window in the second story room of a home abutting the Drexels' was a second-story rear window under the 2011 Supplemental Declaration, but there were no, or at least limited, encroaching views of neighboring properties from that window.

Having resolved all disputes, except attorney's fees, through summary judgment, the attorney's fee issue was tried to the court. The trial court issued a final judgment awarding Toll $133,500 in attorneys' fees under the UDJA. The final judgment included the prior findings of the trial court as determined by various partial summary judgments. This appeal followed.

## STANDARD OF REVIEW

We review the granting of a motion for summary judgment de novo. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013). Where, as here, parties file cross-motions for summary judgment, and the trial court grants one and denies the other, the appellate court reviews the summary judgment evidence supporting the motions and determines all questions presented and preserved. *Kaufman Cty. v. Combs*, 393 S.W.3d 336, 341 (Tex. App.—Dallas 2012, pet. denied) (citing *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex. 1988)). Upon review of the summary judgment record, the court may affirm the judgment, or reverse and render the judgment the trial court should have entered. *Gramercy Ins. Co. v. Auction Fin. Program, Inc.*, 52 S.W.3d 360, 363 (Tex. App.— Dallas 2001, pet. denied).

## DISCUSSION

In their first "sub-issue" to their first issue, the Drexels claim the trial court erred in interpreting the documents that govern the Avignon development. Within this issue, the Drexels present four "sub-issues," each of which we address in turn.

First, we note that the summary judgment record contains copies of the various deed and declarations applicable to the various phases of the Avignon development. The Drexels contend that the 2005 Deed, 2006 Declaration, the 2009 Declaration and other marketing materials established a general plan for the Avignon Development that included Phase 3.[1] They argue that the 2011 Supplemental Declaration expressly subjected Phase 3 to the 2009 Declaration "as though

---

[1] As a preliminary note, we dispose of the idea that the marketing materials cited by the Drexels have any bearing on their argument for a general plan. The marketing materials were expressly disclaimed, and, moreover, the representations in the marketing materials were made by Windhaven, not Toll. Accordingly, any reliance on marketing materials by the Drexels does not create any liability on behalf of Toll.

the additional property had been included in the declaration as originally written." The Drexels allege the trial court erred by concluding the window restrictions in the 2009 Declaration do not govern Phase 3 and that the restrictions in the 2011 Supplemental Declaration are less protective of neighbors' properties than those contained in the 2009 Declaration, and could diminish or eliminate the restrictions governing Phase 3. More particularly, the Drexels argue that the window restrictions established for Phase 3 by the 2011 Supplemental Declaration run afoul of the requirements of the general plan governing the development, as laid out in the 2005 Deed and reiterated in the 2009 and 2006 restrictions. The Drexels' argument is unavailing. The land comprising Phase 3 of the Avignon development was acquired through a distinct real estate transaction separate and apart from the acquisitions of the first two phases.[2]

When Windhaven acquired the Phase 3 land, it was unencumbered by the restrictions established in conjunction with Phases 1 and 2. To be sure, subsequent to this acquisition, Windhaven encumbered the property with restrictive covenants separately recorded by Windhaven in 2011 (2011 Supplemental Declaration). Separate recordings create a separate and distinct subdivision with its own set of restrictions benefiting and burdening only the land in that particular subdivision. *Evans v. Pollock*, 796 S.W.2d 465, 471 (Tex. 1990).

The Drexels argue that Phase 3, even if a separate real estate transaction, must still be evaluated in the context of the general plan. They invite us to conclude that the record shows the 2011 Deed was not a separate transaction, but rather the third part of an extended real estate

---

[2] The Drexels direct us to *Lehmann v. Wallace*, 510 S.W.2d 675 (Tex. Civ. App.–San Antonio 1974, writ ref'd n.r.e.) to argue that a general plan restricts land that is part of the development even if a particular deed contains no references to restrictions. However, the facts in *Lehmann* are distinguishable from those in our case. In that case, among other evidence before the trial court was the fact that the developers executed an affidavit agreement to the plaintiffs in which they covenanted and agreed to attach, and include and include and incorporate in each and every conveyance made after such date of any tract of land out of the "property presently known as Glen Oaks No. One, consisting of approximately 35 tracts, the identical restrictive covenants and conditions as are incorporated in this instrument and in the deed executed by the undersigned to H. C. Wallace and wife, Emalene Wallace. Said instrument further provides that the covenants, restrictions and conditions therein are to run with each tract of land and are binding on the undersigned, their heirs and assigns and all persons claiming under them." *Id.* at 679. In that case, the affidavit covenanted to restrict property that was already a part of the development at the time. In this case, when the Drexels purchased their home, Windhaven had not yet purchased the Phase 3 property. The Phase 3 property was unencumbered when purchased by Windhaven. Accordingly, we are not persuaded by the Drexels' arguments that *Lehmann* should alter our analysis in any way.

transaction. In support of this, the Drexels argue that when the developer and two landowners entered into a contract of sale in 2004, they created an option contract to buy the land that would ultimately become Phase 3.[3] However, when Toll purchased Phase 3, it was no longer wholly unencumbered. By that time, the 2011 Supplemental Declaration had been recorded. In fact, the deed to Toll states that Phase 3 was conveyed to Toll subject to the restrictions in the 2009 Declaration "as amended by" the 2011 Declaration. Thus, the terms of the 2009 Declaration, as amended by the 2011 Supplemental Declaration control the development of that property.

The Drexels contend that the 2009 Declaration's Controlling Document provision expressly subjects the Avignon Development, including all future property that might be incorporated into the development, to the general plan established in the 2005 deed and claims the general plan cannot be by altered by the 2011 Supplemental Declaration. That provision reads as follows:

> Section 7.19 Controlling Documents. This Declaration shall control in the event of any conflict with the Bylaws. The Avignon Windhaven Property is subject to the restrictions and provisions of that certain Special Warranty Deed with Vendor's Lien filed as Document No. 2005-0047598 in the Real Property Records of Collin County, Texas, as amended by that certain Amendment to Special Warranty Deed filed as Document No. 2008-1028001270620 in the Real Property Records of Collin County, Texas (the "Deed"). In the event of a conflict between this Declaration and the Deed, the restrictions in the Deed shall control.

That provision references the 2005 and 2008 Deeds only. Section 7.17 of the 2009 Declaration, concerning expansion of property, reads as follows:

> Section 7.17 Expansion of the Property. Declarant, in its sole discretion and without the approval of any other party, may from time to time subject this Declaration to additional real property by recording in the Real Property Records of Collin County a Supplemental Declaration describing the additional real property to be subjected to this Declaration. Any such Supplemental Declaration which is executed by Declarant or its assignee and recorded in the Real Property Records of Collin

---

[3] The Drexels acknowledge in their reply brief that the 2004 Contract of Sale that they contend establishes the option contract is not in the record. However, they argue that their summary judgment response that was before the trial court described the contents of it and they also say there was no dispute over those contents. In light of the fact that we are unpersuaded by the Drexels' arguments that a "general plan" can burden an unrestricted piece of land, we need not address this evidentiary deficiency.

County shall not require the consent or approval of any other Owner or other person in order to be fully enforceable and effective to cause such additional real property to be incorporated herein. *Such changes in the covenants, conditions, and restrictions of this Declaration and the Bylaws as may be desired with reference only to the subsequent phase or phases may be included in the Supplemental Declaration. Nothing in this Declaration shall be construed to require Declarant or any successor of Declarant to subject additional real property to this Declaration.*

(emphasis added).

Consequently, Windhaven, via Section 7.17, expressly reserved to itself the right to do the very thing about which the Drexels complain—add additional property to the Avignon development and subject that property (and only that property) to different restrictions. *See id.* Accordingly, we are unpersuaded by the Drexels' argument that once Windhaven subjected Phase 3 to certain terms of the 2009 Declaration, Phase 3 became subject to the same restrictions as Phases 1 and 2 and could not be subject to different restrictions by virtue of the 2011 Supplemental Declaration. If the Drexels' position were correct, it would, in effect, nullify Windhaven's express right to "adopt changes in the covenants, conditions, and restrictions [] as may be desired with reference only to the subsequent phase." *See Pilarcik v. Emmons*, 966 S.W.2d 474, 479 (Tex. 1998). We conclude that Windhaven's intent was clear–it retained the ability to add additional property to the development subject to different restrictions, and it exercised that retained right.

The Drexels also direct us to section 7.15 of the 2009 Declaration, which reads as follows:

Section 7.15 Amendment. This Declaration may be amended only as follows:

(a) Until the rights and authority granted to "Declarant" hereunder vest in the Association pursuant to Section 7.16 hereof, the Declarant shall have and reserves the right at any time and from time to time, without the joinder or consent of any other party, to amend this Declaration by any instrument in writing duly signed, acknowledged and filed for record, provided that any such amendment shall be consistent with and in furtherance of the general plan and scheme of development as evidenced by this Declaration and shall not impair or affect the vested property or other rights of any Owner or his mortgagee.

(b) At any time, the Owners of the legal title to a majority of the Lots (as shown by the Collin County Real Property Records) may amend the covenants,

conditions and restrictions set forth herein by signing, acknowledging and recording an instrument containing such amendment(s), except that no amendment made to the Declaration or Bylaws for a period of twenty-four (24) months from the transfer of the first Lot or prior to the Termination Date (whichever shall last occur) shall be valid and effective without the joinder and consent of Declarant.

(c) Any amendment affecting or modifying any right or obligation of the City, whether effected by Section 7.l5(a) or (b) above, or by the proposed termination of this Declaration, shall require prior written consent of the City.

The Drexels argue that this provision governs the way in which it is permissible to amend the supplemental declaration and that the 2011 Declaration constituted an improper amendment of the 2009 Declaration. The language of this provision governs the 2009 Declaration and governs the way in which that declaration may be amended. However, it does not govern the way in which the 2011 Declaration may be amended. The Phase 3 land was acquired through a separate real estate transaction that was explicit in its ability to operate independent of the 2009 Declaration. When Windhaven elected to subject the land to the 2011 Declaration, it was not amending the 2009 Declaration in and of itself. Instead, it was subjecting a distinct tract of land to an amended version of the restrictions contained in the 2009 Declaration.[4]

The Drexels also direct us to Section 1.21 of the 2009 Declaration, which defines "Supplemental Declaration" as follows:

Section 1.21 "Supplemental Declaration" shall mean a recorded instrument which accomplishes one or more of the following purposes: (i) subjects additional real property to this Declaration, or (ii) imposes, expressly or by reference, additional restrictions, covenants, easements and/or obligations on the land described.

---

[4] On rehearing, the Drexels question the propriety of our addressing this argument. Our review obligations on summary judgment are clear. We must consider all (and only those) grounds identified in the motion for summary judgment. If the trial court explicitly relied on one or more of those grounds in granting judgment we "must" affirm if that ground supports the judgment. *See Pride ex rel. Pride v. Collin park Marina, Inc.*, No. 05-97-01410-CV, 2001 WL 755907, at *3 (Tex. App.—Dallas July 6, 2001, pet. denied); *Kiefer v. Continental Airlines, Inc.*¸882 S.W.2d 496, 498 (Tex. App.—Houston [1st Dist.] 1994), *aff'd,* 920 S.W.2d 274 (Tex. 1996). Also, we "should consider" any other ground or grounds specified below, even if they were not identified by the trial court as the basis for its decision, and affirm if the ground presented and preserved below would support the judgment. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996); *Arthur's Garage, Inc. v. Racal-Chubb Sec. Sys., Inc.*, 997 S.W.2d 803, 819 n. 19 (Tex. App.—Dallas 1999, no pet.); *see also Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842 (1984)  (as an appellate court, we review judgments, not opinions). Because the appellee is under no obligation to even file a brief—and cannot urge new grounds for the first time on appeal in any case—our review of the judgment is not dependent on arguments made in the appellate briefs, if any, by appellee in support of the judgment, but instead turns only on whether the ground was presented below. In one of their motions for partial summary judgment, appellees raised the issue of which documents govern Phase 3. This Court may thus review this issue and decide same on any basis grounded in law. *See Cates*, 927 S.W.3d at 626; *see also Coggin v. Longview Indep. Sch. Dist.*, 337 F.3d 459, 471 (5th Cir. 2003) (Edith Jones, J., dissenting) (quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1980) (Scalia, J.)); *see also Miller v. JSC Lake Highlands Operations, LP*, 536 S.W.3d 510, 513 n.5 (Tex. 2017).

–11–

This provision does not change our analysis. This section allows additional real property to be subject to this declaration, and, in conjunction with Section 7.17, allowed Windhaven to make changes regarding the covenants, conditions, and restrictions as they apply to a subsequent phase. That is what happened here. Phase 3 land was subject to the declaration, however, Windhaven made changes as was permitted by Section 7.17.

We therefore conclude the trial court did not err in finding, based on the summary judgment evidence before it concerning the conveyances and governing documents that the restrictions set forth in the 2011 Declaration govern Phase 3 of the development. We overrule the Drexel's first "sub-issue" to their first issue and affirm the trial court's ruling on which governing documents control in this case.

In their second "sub-issue" to their first issue, the Drexels contend the trial court erred by construing the terms "second story window" and "restricted" as having overly technical meanings instead of their plain and ordinary meaning. Before the trial court, Toll argued that some of the windows at issue are not second story windows because they are located in rooms without second floors. The Drexels argued that the windows are "second story windows," and noted that the windows at issue are above the second floor line on the building plans for the property and that they are above first floor windows. The parties filed competing cross-motions on this question, and submitted substantial evidence to the trial court in support of their respective definitions, including depositions, affidavits, dictionary definitions, technical definitions, photos of various properties in the development, floor plans, and more.

The trial court found the phrase "second story rear windows" in Section 3(F)(2) of Exhibit E to the 2011 Supplemental Declaration meant "a window or set of windows located in a second story room on the rear elevation of a Phase 3 house," and did not apply to an elevated window on a room on the ground floor. Further, the trial court found the term "restricted" in the window

restriction provisions of the 2011 Supplemental Declaration meant "a second story rear-window in a house that backs up to Phase 2 is permitted only if it has limited or no encroaching views of neighboring properties in its ordinary and expected use." We conclude a fact issue exists concerning the meaning of these terms. Accordingly, the trial court erred in taking it upon itself to craft definitions. *Tarr v. Timberwood Park Owners Assoc., Inc.*, 556 S.W.3d 274, 280 (Tex. 2018) (noting that standard rules of contract interpretation govern restrictive covenants and also that the words in a covenant may not be enlarged, extended, stretched, or changed by construction); *see also Tanner v. Nationwide Mut. Fire Ins. Co.*, 289 S.W.3d 828, 831 (Tex. 2009) (noting that under ordinary rules of contract interpretation we give language its plain meaning unless something else shows the parties intended a different, technical meaning). We sustain the Drexels' second "sub-issue" to their first issue.

In their third "sub-issue" to their first issue, the Drexels contend the trial court erred in granting summary judgment after finding the restrictions to be ambiguous. Whether a restrictive covenant is ambiguous is a question of law. *Tarr*, 556 S.W.3d at 280. If the text can be given a definite meaning, then the covenant is unambiguous; but if the text is susceptible to more than one reasonable interpretation, then the covenant is ambiguous. *Id.* If the text is ambiguous, a fact issue on the parties' intent obtains. *Wunderlick v. Wilson*, 406 S.W.3d 212, 216 (Tex. App.—Dallas 2013, no pet.) (reversing summary judgment because ambiguity created fact question).

Here, the trial court ruled that restriction #4 is ambiguous. Restriction #4 states, "The window restrictions are intended to minimize and eliminate view encroachments." Assuming, without deciding, the restriction is ambiguous, the trial court erred by taking it upon itself to interpret the restrictions rather than leave this fact issue for the jury to decide. *See id.* In any event, even if the restriction is unambiguous, as more fully set forth herein, in this case, the further question of whether certain windows violate the window restrictions is a question of fact.

–13–

Consequently, the trial court erred in proceeding to grant summary judgment after having found an ambiguity in the restrictive covenants. We sustain the Drexels' third "sub-issue" to their first issue.

In the fourth "sub-issue" to their first issue, the Drexels contend the trial court erred by entering judgment in favor of Toll in reliance on factual findings it made concerning the windows and view encroachments based upon evidence presented by motion for summary judgment. The portion of the trial court's final judgment relating to the factual findings reads, in relevant part:

> Based on the competent summary judgment evidence presented to the Court, the Court FINDS that:
>
> (l) the windows situated on the rear elevation of the great rooms of each of the homes located at 6101, 6105, 6109, and 6113 Monte Cristo, Plano, Texas are not second-story rear windows and, thus, are not restricted under the 2011 Supplemental Declaration;
>
> (2) the rear facing circular window located in the second story room at 6105 Monte Cristo, Plano, Texas, is a "second story rear window" under the 2011 Supplemental Declaration;
>
> (3) there are either no, or at least limited, encroaching views of neighboring properties from the second story rear window at 6105 Monte Cristo; and
>
> (4) the rear-facing windows in the homes at 6101, 6105, 6109, and 6113 Monte Cristo, Plano, Texas are not in violation of the 2011 Restrictions.

Findings of fact are generally inappropriate in a summary judgment proceeding because summary judgment is appropriate only if there is no genuine issue of material fact. *See* TEX. R. CIV. P. 166a(c); *Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex. 1994). Moreover, a decision as to whether the windows in question violate the restrictions is, in the first instance, a decision the jury has to make, not the trial court by summary judgment. The question of whether a particular window has no or at least limited, encroaching views is inherently a fact issue. We conclude the trial court erred by entering a final judgment that incorporates the granting of an interlocutory summary judgment in which the trial court acted as a fact finder and made findings of fact. Accordingly, we sustain the fourth "sub-issue" to the Drexels' first issue and we strike the findings

and reverse the trial courts judgment ordering, adjudging, and decreeing that the Drexels take nothing in connection with any of their claims against Toll and remand the case for further proceedings consistent with this opinion.

## II. Attorney's Fees

As set forth above, we have agreed with the trial court's construction in some respects and uphold its decision on summary judgment in those respects. We must now determine whether Toll is entitled to some or all of the fee awarded in the trial court as a result. In their second issue, the Drexels argue that Toll is barred from recovering attorney's fees under the DJA because Toll impermissibly used the Declaratory Judgment Act ("Act") as a vehicle to recover otherwise unavailable attorney's fees.

We review a trial court's award of fees for an abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). It is an abuse of discretion to award attorney's fees under the Act when the statute is relied upon solely as a vehicle to recover such fees. *City of Carrollton v RIHR Inc.*, 308 S.W.3d 444, 454 (Tex. App.—Dallas 2010, pet. denied). The Act cannot be used to "obtain otherwise impermissible and unavailable attorney's fees." *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009); *City of Carrollton*, 308 S.W.3d at 454. This rule bars the recovery of attorney's fees for Act claims that merely duplicate other affirmative claims for which fees are unrecoverable. *MBM*, 292 S.W.3d at 671. It also bars the recovery of Act fees for merely "resisting" or defending against an opposing party's Act claim. *Cellular Sales of Knoxville, Inc. v. McGonagle*, No. 05–13–00246–CV, 2014 WL 3513254, at *8 (Tex. App.— Dallas July 15, 2014, no pet.) (mem. op.).

The Drexels argue declaratory judgment was not available to Toll because the dispute concerning the restrictive covenants already existed. Here, the Drexels brought breach-of-contract claims seeking damages and injunctive relief, alleging (1) that they had contractual rights arising

from the covenants and restrictions established in the 2005 Deed, the 2006 Declaration, the 2009 Declaration, and the 2011 Supplemental Declaration; (2) that the 2009 Declaration applied to Phase 3 and Toll had violated the Restrictions in the 2009 Declaration; (3) that the Restrictions in the 2011 Supplemental Declaration were void as impermissible amendments to the 2009 Declaration—or, if not void, they applied in addition to the restrictions in the 2009 Declaration; (4) that Toll had installed windows in houses in Phase 3 that violated the Window Restrictions in the 2009 Declaration; and (5) that Toll's windows also violated the Window Restrictions in the 2011 Supplemental Declaration.

In response, Toll asserted a counterclaim under the Act, asking the trial court to declare (1) that the 2006 Declaration did not apply to Phase 3; (2) that the 2009 Declaration did not apply to Phase 3; (3) that only the 2011 Supplemental Declaration applied to Phase 3; and (4) that the windows installed in houses that back to the Drexels' property do not violate the Window Restrictions in the 2011 Supplemental Declaration. Toll's request for declarations in this case was simply a restatement of its denial of the Drexel's breach of contract claims. Thus, the main thrust of Toll's declaratory judgment action encompassed an issue that could be resolved within the context of its denial of the Drexel's breach of contract claims. *See, e.g., Crews v. Dkasi Corp.*, 469 S.W.3d 194, 204 (Tex. App.—Dallas 2015, pet. denied) (party seeking declaration that a partnership agreement terminated on a certain date was no more than a restatement of defense that no agreement existed or that the agreement terminated on a certain date and the trial court could resolve the issue through defenses raised rather than through declaration). Toll nevertheless argues that the declaratory judgment is necessary in order to determine which restrictions govern its future obligations in building out the Phase 3 properties. We are unpersuaded by this argument, as the underlying issues regarding which restrictions govern will be fully resolved in connection with the Drexels' claim.

Under these facts, Toll's invocation of the Act added nothing of substance to Toll's case and could serve only as a vehicle for fee shifting. Accordingly, the trial court abused its discretion by entering declarations concerning the applicable development restrictions and by awarding Toll attorney's fees. Consequently, we sustain the Drexels' second issue.

## CONCLUSION

We affirm the trial court's final judgment finding:

(1)     The 2011 Supplemental Declaration did not eliminate the development restrictions in the 2006 Declaration or the 2009 Declaration, but neither the 2006 Declaration or the 2009 Declaration apply to any lot in Phase 3 of the Avignon Windhaven subdivision;

(2)     The 2006 Declaration and the 2006 Design Guidelines do not apply to any lot in Phase 3 of the Avignon Windhaven subdivision;

(3)     Exhibit C to the 2009 Declaration does not apply to any lot in Phase 3 of the Avignon Windhaven subdivision;

(4)     Exhibit E to the 2011 Supplemental Declaration does not apply to all of the lots in Phase 3 of the Avignon Windhaven subdivision[.]

We reverse the remainder of the trial court's judgment and remand the case to the trial court for further proceedings consistent with this opinion.


/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

180099F.P05

–17–



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WILLIAM DREXEL AND SANDY DREXEL, Appellants

No. 05-18-00099-CV          V.

TOLL BROTHERS, INC. AND TOLL DALLAS TX LLC, Appellees

On Appeal from the 296th Judicial District Court, Collin County, Texas
Trial Court Cause No. 296-03255-2012.
Opinion delivered by Justice Schenck.
Justices Osborne and Reichek participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **AFFIRM** that portion of the trial court's judgment finding:

(1) The 2011 Supplemental Declaration did not eliminate the development restrictions in the 2006 Declaration or the 2009 Declaration, but neither the 2006 Declaration or the 2009 Declaration apply to any lot in Phase 3 of the Avignon Windhaven subdivision;

(2) The 2006 Declaration and the 2006 Design Guidelines do not apply to any lot in Phase 3 of the Avignon Windhaven subdivision;

(3) Exhibit C to the 2009 Declaration does not apply to any lot in Phase 3 of the Avignon Windhaven subdivision;

(4) Exhibit E to the 2011 Supplemental Declaration does not apply to all of the lots in Phase 3 of the Avignon Windhaven subdivision[.]

In all other respects, the trial court's judgment is **REVERSED**. We **REMAND** this cause to the trial court for further proceedings consistent with this opinion.

Judgment entered this 21st day of January, 2020.