In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00263-CV**
_____

**KENNETH A. BITGOOD, Appellant**

**V.**

**STEPHEN S. HARKNESS AND ANNA M. HARKNESS, Appellees**

On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 20-05-05682-CV

**MEMORANDUM OPINION**

This appeal pertains to a dispute over property restrictions. Kenneth A. Bitgood (Bitgood or Appellant) owns a .382 acre tract and a .131 acre tract of land located in the Elijah Collard Survey, Abstract 7, in Montgomery County, Texas. Bitgood's neighbors, Stephen S. Harkness and Anna M. Harkness (collectively Harkness or Appellees) own a 1.5728 acre tract of land next to Bitgood. This dispute arose when Harkness began to build a structure on the 1.5728 acres. Bitgood filed a suit against Harkness to stop Harkness from building what Bitgood calls a "pole

1

barn" and what Harkness describes as a "workshop." Bitgood alleged that Harkness was violating certain deed restrictions. In the trial court, initially the trial court granted a temporary injunction in favor of Bitgood, but thereafter the trial court held another hearing and entered an Order Sustaining Defendants' Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction, and therein dissolved the temporary injunction and dismissed the Plaintiff's First Amended Application for Temporary Restraining Order, Temporary Injunction, Permanent Injunction, and Original Petition without prejudice.

Bitgood appeals the trial court's order (1) sustaining Appellees' Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction; (2) dismissing without prejudice Bitgood's First Amended Application for Temporary Restraining Order, Temporary Injunction, Permanent Injunction, and Original Petition; and (3) dissolving the temporary injunction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014. We affirm the trial court's order.

Factual Background and History

In 1972, Bill and Agnes D'Amico purchased a 5.935 acre tract of land (hereinafter also called the Larger Tract) located in the Elijah Collard League Survey, Abstract 7 in Montgomery County, Texas, as described in a deed filed for record in Montgomery County, Texas. In 1975, the D'Amicos sold three parcels out of the 5.935 acre Larger Tract, and they executed and filed for record a Declaration

2

of Covenants, Conditions Restrictions and Easements (the "1975 D'Amico Restrictions"), which specifically made the restrictions therein applicable to the three parcels as described on the attached Exhibits A, B, and C to the 1975 D'Amico Restrictions.[1] Bitgood and Harkness do not dispute that the three parcels described in the 1975 D'Amico Restrictions are not part of Bitgood's or Appellees' property. Over the course of decades, the D'Amicos sold other parcels that were carved out of the Larger Tract and the conveyances varied as to whether any restrictions were placed on the parcels. Some of the conveyances were made subject to the 1975 D'Amico Restrictions and some were not. Some conveyances were not subject to any restrictions, and some parcels were conveyed only with language stating they were subject to restrictions "if any" and no reference was made to any specific restrictions. Other parcels were conveyed with restrictions contained in the deed of conveyance and those restrictions were not the same as the 1975 D'Amico Restrictions.

In 2006, Bitgood purchased his .382 parcel from Billy Gray D'Amico, subject to restrictions "if any," but the parties do not dispute that when Bitgood purchased

---

[1] According to the appellate record, there was no plat attached to, no subdivision map filed with, and no specific subdivision described in the 1975 D'Amico Restrictions. Exhibit A attached thereto contained field notes describing a .3995 acre tract out of the Larger Tract, Exhibit B attached thereto contained field notes describing a .134 acre tract out of the Larger Tract, and Exhibit C attached thereto contained field notes describing a 65.4 square foot parcel out of the Larger Tract.

the tract, no recorded restrictions applied to the parcel. On March 5, 2007, Bitgood and his wife then purchased the .131 acre parcel from the D'Amicos, and the deed stated it was subject to restrictions "if any," and the parties do not dispute there were no recorded restrictions applicable to that parcel. Both parcels were carved out of the 5.935 acre Larger Tract.

Melanie Faulkner purchased a 1.408 acre parcel from the D'Amicos in 2000 and a .1258 acre parcel from the D'Amicos in 2007, and both parcels were carved out of the 5.935 acre Larger Tract and subject to recorded restrictions, "if any" (the parties do not dispute that there were no recorded restrictions applicable to that parcel).

On March 6, 2007, Melanie Faulkner sold her 1.5728 acres[2] to Eric D. Hitchcock and at that time she attached several listed "restrictions" that appear to have been taken from some undescribed parcels or other conveyances, and there are marks and handwritten notations thereon. The restrictions attached to the Hitchcock deed do not match the restrictions contained in the 1975 D'Amico Restrictions. In pertinent part, in the deed of conveyance from Faulkner to Hitchcock, which

---

[2] It is not clear from the appellate record what accounted for the discrepancy between the total numerical acreage of the two lots referenced in the deeds from D'Amico to Faulkner (.1258 + 1.408=1.54 rounding up) with the 1.5728 acres described in the deed from Faulkner to Hitchcock.

occurred *after* Bitgood had already purchased his lots, the deed included the following language:

(A) . . . . No building shall be erected, altered, placed or permitted to remain on any tract other than one detached single family dwelling not to exceed (3) stories in height, together with a private garage or carport for not more than three (3) cars and servant's type quarters, which may be occupied by an integral part of the family occupying the main residence of the building site, or by servants employed on the premises; and (2) a tool shed or work shop []; attached or unattached to the residence building.

(B) No improvements of any nature shall be erected, placed or altered on any building plot on this tract until the plans, specifications and plot plans showing the location of such improvements, have been approved in writing as to conformity and harmony of external design with existing structures on this tract and as to location with respect to topography and finished ground elevation by the Architectural Control Committee, originally consisting of Bill D'Amico and Agnes D'Amico, that may be expanded to include up to three additional property owners, when 3/4ths of the property is sold. . . .

(C) Except as may be authorized in writing by the Architectural Control Committee, no portion of any building shall be located nearer than the 25 foot building line [] that runs adjacent to and follows the road easement for "Lake Conroe Drive" or nearer to said lots sides and rear lines than 15 (fifteen) feet.

. . . .

(F) . . . . All buildings shall be constructed with brick or stone or a combination of the two covering at least sixty (60) percent of the outside wall area. . . .

. . . .

(H) No housing for garage, servant's quarters, or other service function of the dwelling establishment shall be erected or placed upon

5

any building site until construction of the dwelling proper has been started and is actually underway. . . .

     (U) The covenants, conditions, restrictions, and easements of this declaration shall run with and bind the property and shall inure to the benefit of and be enforceable by any property owner within the said 5.935 acre unless amended as provided herein, shall be effective for a term of twenty years from the date this declaration is recorded. After which time said covenants, conditions and restrictions shall be automatically extended for successive periods of ten years, the covenants, conditions, and restrictions of the declaration may be amended by an instrument executed by a majority vote of the Architectural Control Committee[.]

In 2017, Hitchcock sold the 1.5728 acre parcel, which is adjacent to Bitgood's two parcels, to the Appellees. The deed from Hitchcock states that it was made subject to "[v]alidly existing easements, rights-of-way, and prescriptive rights, whether of record or not; and all presently recorded and validly existing instruments, other than conveyances of the surface fee estate, that affect the Property."

Bitgood sued Appellees to enforce deed restrictions that Bitgood contends was placed on Appellees' parcel at the time Appellees purchased their parcel. The restriction at issue was inserted into the Hitchcock deed after Bitgood purchased his parcels and about forty years after the D'Amicos sold the parcels out of the Larger Tract. Bitgood filed Plaintiff's First Amended Application for Temporary Restraining Order, Temporary Injunction, Permanent Injunction, and Original Petition (the Petition), suing Appellees for injunctive relief, claiming they were violating restrictive covenants conveyed in the Defendants' July 21, 2017 Warranty

6

Deed on file in Montgomery County. The Petition alleges that the restrictive covenants are detailed by the March 6, 2007 General Warranty Deed on file with Montgomery County and are enforceable by the same deed by any property owners within the Larger Tract. According to the Petition, the "pole barn"[3] Appellees are constructing on their tract violates the restrictions on the property because the structure (1) violates the restrictions because barns are expressly prohibited, and the pole barn exceeds dimensions for buildings on Appellees' property; (2) violates the restrictions because Appellees failed to obtained approval from the Architectural Control Committee for the new pole barn on Appellees' property; (3) violates the restrictions because the pole barn is being constructed within the required setbacks and easements; (4) violates the restrictions because the pole barn will not be constructed of brick or stone but of metal; and (5) violates the restrictions because Appellees have not constructed their residential dwelling.

The trial court issued a temporary injunction on June 4, 2020. Appellees filed their Third Amended Answer and subsequently their Defendants' Amended Motion to Dismiss for Lack of Subject Matter Jurisdiction and Dissolve the Temporary Injunction (the Motion). In the Motion, Appellees alleged that Bitgood "lacks standing to pursue his claim because the deed restrictions, whether or not valid or

---

[3] Appellees dispute that they are building a "pole barn" and they contend they are building a workshop.

enforceable, are not enforceable" by Bitgood against Appellees. Specifically, Appellees argued that Bitgood lacks standing to sue Appellees because (1) there is no privity of contract or title between Bitgood and Appellees; and (2) Bitgood is not subject to the very covenants he claims are being violated by Appellees, which negates mutuality of obligations between the parties because there is no common plan or scheme in the development of the approximate Larger Tract that includes the parcels acquired by Bitgood and Appellees, among others. Appellees attached as exhibits to their Motion the deeds of conveyance for the parcels within the Larger Tract. According to Appellees, Bitgood bases his standing on Section (U) of the deed restrictions in Hitchcock's deed, which Bitgood alleged would be applicable to Appellees' parcel, and Bitgood contends that Section (U) provides that any property owner within the Larger Tract has standing to enforce those restrictions. According to Appellees, the restrictions in the Hitchcock deed cannot give Bitgood standing because there is no common plan or scheme in the development of the Larger Tract, negating mutuality of obligation. Appellees contend that the restrictions in the Hitchcock deed are personal covenants between Appellees and their predecessor in title only.

Bitgood filed a response to the Motion. In his response, Bitgood argued that he has standing because the plain language of the restrictions granted him the authority to enforce the restrictions. He based this argument on Section (U) of the

8

restrictions in the Hitchcock deed. Bitgood also argued that the general scheme of the Larger Tract provided benefit to all the owners in the Larger Tract, and therefore the owners in the Larger Tract may enforce the restrictions on Appellees' parcel.

After a hearing, the trial court granted the Motion to Dismiss and found that Bitgood lacked standing, dismissed Bitgood's claims without prejudice, and dissolved the temporary injunction. Bitgood timely appealed.

Standard of Review

The determination of whether to dissolve a temporary injunction lies within the sound discretion of the trial court, and we will not overrule its determination absent an abuse of discretion. *See Kassim v. Carlisle Interests, Inc.*, 308 S.W.3d 537, 540 (Tex. App.—Dallas 2010, no pet.); *Universal Health Servs., Inc. v. Thompson*, 24 S.W.3d 570, 580 (Tex. App.—Austin 2000, no pet.). A trial court abuses its discretion when it acts in an unreasonable and arbitrary manner or when it acts without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). When, as here, the interlocutory appeal is from an order granting a motion to dissolve, and the initial order granting temporary injunctive relief was not appealed, we do not consider the propriety of the trial court's decision granting the initial injunctive relief. *See Tober v. Turner of Tex., Inc.*, 668 S.W.2d 831, 834 (Tex. App.—Austin 1984, no writ). Our review of the trial court's order of dissolution is limited to the narrow question of whether the trial

9

court's action in dissolving the injunction constituted a clear abuse of discretion. *Desai v. Reliance Mach. Works, Inc.*, 813 S.W.2d 640, 641-42 (Tex. App.—Houston [14th Dist.] 1991, no writ). "Whether a party has standing to maintain a suit is a question of law, which we review de novo." *Hobbs v. Van Stavern*, 249 S.W.3d 1, 3 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (citing *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 646 (Tex. 2004)).

### Issues on Appeal

In issue one, Bitgood argues that the trial court abused its discretion in dissolving the temporary injunction because dissolution is only proper when the movant establishes changed circumstances. According to Bitgood, there are no changed circumstances, and none were alleged. In issue two, Bitgood argues he has standing to bring claims against the Appellees (1) based on the express language in the property restrictions for Appellees' property; (2) as an intended third-party beneficiary to those restrictions; or (3) due to the general scheme of development for the Larger Tract, a tract that once included both Appellant's and Appellees' properties. In the alternative, Bitgood argues in issue three that the trial court erred in dismissing Bitgood's claims before allowing for additional discovery on Bitgood's standing.

## Standing

In his first issue, Bitgood argues that the trial court abused its discretion in dissolving the temporary injunction because dissolution was not proper because the movant failed to establish changed circumstances. We disagree. While it is true that a trial court generally has no duty to dissolve a temporary injunction, the trial court should dissolve an injunction when fundamental error has occurred, or conditions have changed. *See Cellular Mktg., Inc. v. Houston Cellular Tel. Co.*, 784 S.W.2d 734, 735 (Tex. App.—Houston [14th Dist.] 1990, no writ). Fundamental error exists when the record affirmatively shows that the court rendering the injunction lacked jurisdiction of the subject matter. *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006); *Pirtle v. Gregory*, 629 S.W.2d 919, 920 (Tex. 1982).

"Standing is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000) (citation omitted). "In order for any person to maintain a suit it is necessary that he have standing to litigate the matters in issue." *Hunt v. Bass*, 664 S.W.2d 323, 324 (Tex. 1984). "Standing consists of some interest peculiar to the person individually and not as a member of the general public." *Id.*

A party seeking affirmative relief must allege facts in his or her pleading that "affirmatively demonstrate the court's jurisdiction to hear the cause." *Tex. Ass'n of*

11

*Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993); *see also In re S.M.D.*, 329 S.W.3d 8, 13 (Tex. App.—San Antonio 2010, pet. dism'd) ("The burden of proof on the issue of standing is on the party asserting standing."). And courts must consider evidence relevant to jurisdiction, when doing so is necessary to resolve a challenge to the trial court's jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 223 (Tex. 2004); *Bland*, 34 S.W.3d at 555.

Bitgood argues on appeal that Appellees should not be able to "use a procedural backdoor in order to overturn an injunction" when Appellees failed to object on the ground of standing at the time of the injunction hearing and then did not timely appeal the temporary injunction order. Standing is an element of subject-matter jurisdiction that may be raised by a party for the first time on appeal or may be considered by the court sua sponte. *Tex. Ass'n of Bus.*, 852 S.W.2d at 445-46; *Myer v. Cuevas*, 119 S.W.3d 830, 833 (Tex. App.—San Antonio 2003, no pet.). Standing cannot be waived or conferred by agreement. *Tex. Ass'n of Bus.*, 852 S.W.2d at 445-46; *Green Tree Servicing, LLC v. Woods*, 388 S.W.3d 785, 790 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *In re Smith*, 262 S.W.3d 463, 466 (Tex. App.—Beaumont 2008, orig. proceeding). In his Reply Brief, Bitgood asserts he is not alleging that Appellees waived their standing argument, but he argues that "[t]he alleged standing issue existed at the time the [temporary] Injunction was granted and [Appellees] should have appealed at that time."

In the record now before us, Appellees alleged that Bitgood lacked standing in the trial court, and Appellees also filed a motion to dismiss with the trial court, but even if Appellees had not, this Court is "obligated to review *sua sponte* issues affecting jurisdiction." *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004). As we have previously discussed, a trial court has a duty to dissolve an injunction where there is fundamental error, such as when the record affirmatively shows that the trial court does not having subject matter jurisdiction due to lack of standing. *See Tamez*, 206 S.W.3d at 577; *Tex. Ass'n of Bus.*, 852 S.W.2d at 443-45; *Pirtle*, 629 S.W.2d at 920; *Cellular Mktg., Inc.*, 784 S.W.2d at 735.

Bitgood argues that he has standing to bring claims against the Appellees (1) based on the express language in Appellees' property restrictions; (2) as an intended third-party beneficiary to those restrictions; and (3) due to the general scheme of development for the Larger Tract, a tract that includes both Appellant's and Appellees' parcels. When reviewing an order granting a motion to dissolve a temporary injunction, and the initial order granting temporary injunctive relief was not appealed, we do not consider the propriety of the trial court's decision granting the initial injunctive relief, and we are restricted to reviewing the pleadings and the record from the hearing on the motion to dissolve the temporary injunction. *See Murphy v. McDaniel*, 20 S.W.3d 873, 877 (Tex. App.—Dallas 2000, no pet.) (citing *Tober*, 668 S.W.2d at 834-45).

13

In disputes over deed restrictions, a person has standing to enforce the restrictions only upon a showing that the restrictions were intended to inure to his or her benefit. *Calvary Temple v. Taylor*, 288 S.W.2d 868, 870 (Tex. App.—Galveston 1956, no writ); *see also Wasson Interests, Ltd. v. Adams*, 405 S.W.3d 971, 973-74 (Tex. App.—Tyler 2013, no pet.) (where city leased parcel of land to lessee and conveyed second parcel across road from first parcel subject to restrictions, restriction was for city's benefit, and lessee of first parcel lacked standing to enforce restriction against owner of second parcel); *Ski Masters of Tex., LLC v. Heinemeyer*, 269 S.W.3d 662, 668-69 (Tex. App.—San Antonio 2008, no pet.) (standing depends on privity of contract or existence of a common plan or scheme applicable to restricted property and property owned by party seeking enforcement).; *McCart v. Cain*, 416 S.W.2d 463, 465 (Tex. App.—Ft. Worth 1967, writ ref'd n.r.e.) (party claiming restriction must show that restriction exists and is for the benefit of his land).

"[I]t is well settled that a restriction on a piece of property may not be enforced by one who owns land not subject to the restriction, absent privity of contract or a general plan or scheme of development applicable to the land that the plaintiff does own." *Country Cmty. Timberlake Vill., L.P. v. HMW Special Util. Dist.*, 438 S.W.3d 661, 668 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citing *Wasson Interests*, 405 S.W.3d at 974 (restrictive covenant is not enforceable solely due to

common source of title but requires either privity of contract or a general plan or scheme of development)).

"Ordinarily, only the contracting parties and those in direct privity with the contracting parties have standing to enforce restrictive covenants." *Dealer Comput. Servs., Inc. v. DCT Hollister Rd, LLC*, 574 S.W.3d 610, 616 (Tex. App.—Houston [14th Dist.] 2019, no pet.). Bitgood acknowledges he is not a party to the Hitchcock deed in question, but he argues he has standing as an intended third-party beneficiary of the restrictions. In making this argument, Bitgood solely relies on the language of Section (U) in the Hitchcock deed. We explain below that the language in Section (U) does not grant Bitgood standing and further reject his claim that he is an intended third-party beneficiary.

Generally, when the party seeking to enforce a restrictive covenant is not a party to the contract, each purchaser within a recorded subdivision may still have standing to enforce such restrictions if the original owner of the parent tract subdivided the property into lots and created a subdivision in which all the property owners agree to the same or similar restrictive covenants designed to further the owner's general plan or scheme of development. *See Ski Masters*, 269 S.W.3d at 668.

> [T]he general rule may be safely stated to be that where there is a general plan or scheme adopted by the owner of a tract, for the development and improvement of the property by which it is divided into streets and lots, and which contemplates a restriction as to the uses

15

to which lots may be put, or the character and location of improvements thereon, to be secured by a covenant embodying the restriction to be inserted in the deeds to purchasers, and it appears from the language of the deed itself, construed in the light of the surrounding circumstances, that such covenants are intended for the benefit of all the lands, and that each purchaser is to be subject thereto, and to have the benefit thereof, and such covenants are inserted in all the deeds for lots sold in pursuance of the plan, a purchaser and his assigns may enforce the covenant against any other purchaser, and his assigns, if he has bought with actual or constructive knowledge of the scheme, and the covenant was part of the subject-matter of his purchase.

*Hooper v. Lottman*, 171 S.W. 270, 272 (Tex. App.—El Paso 1914, no writ); *see also Evans v. Pollock*, 796 S.W.2d 465, 466 (Tex. 1990) (describing *Hooper* as "[t]he leading Texas case" in this area).

Bitgood alleges the original owners (the D'Amicos) adopted a general scheme of development for the Larger Tract, which once included both Appellant's and Appellees' parcels. As explained above, when a grantor subdivides his land, imposing covenants and restrictions that run with the land, and conveys it to various grantees, each grantee may enforce those covenants if they were part of a general plan or scheme of development for the entire parcel that was part of the inducement for purchasers to obtain land within the restricted area. *See Hooper*, 171 S.W. at 272; *see also Ski Masters*, 269 S.W.3d at 669. When a property owner seeks to enforce such a restrictive covenant, standing depends on "(1) the existence of a general plan or scheme of development (2) that was part of the inducement for purchasers to obtain land within the restricted area[.]" *Ski Masters*, 269 S.W.3d at 669.

The most familiar cases in which courts of equity have upheld the right of owners of land to enforce covenants to which they were not parties are those in which it has appeared that a general building scheme or plan for the development of a tract of land has been adopted, designed to make it more attractive for residential purposes by reason of certain restrictions to be imposed on each of the separate lots sold. This forms an inducement to each purchaser to buy, and it may be assumed that he pays an enhanced price for the property purchased. The agreement therefore enters into and becomes a part of the consideration. The buyer submits to a burden upon his own land because of the fact that a like burden imposed on his neighbor's lot will be beneficial to both lots. The covenant or agreement between the original owner and each purchaser is therefore mutual. The equity in this particular class of action is dependent as much on the existence of the general scheme of improvement or development as on the covenant, and restrictions which contemplate a general building plan for the common benefit of purchasers of lots are recognized and enforced by courts of equity at the instance of the original grantor or subsequent purchasers.

*Hooper*, 171 S.W. at 272; *see also Curlee v. Walker*, 244 S.W. 497, 498 (Tex. 1922) ("It was implied in each contract that every other contract should have these same provisions of restrictions, as they were for the benefit of all and at once formed an inducement to each purchaser.").

A general plan or scheme of development "'may be established in various ways, such as by express covenant, by implication from a filed map, or by parol representations made in sales brochures, maps, advertising, and oral statements on which the purchaser relied in making his purchase.'" *Country Cmty. Timberlake Vill., L.P.*, 438 S.W.3d at 668 (quoting *Lehmann v. Wallace*, 510 S.W.2d 675, 680 (Tex. App.—San Antonio 1974, writ ref'd n.r.e.).

17

To establish the existence of a general plan or scheme of development, the party seeking to enforce deed restrictions must establish that

> [1] a common grantor [2] develop[ed] a tract of land [3] for sale in lots and [4] pursue[d] a course of conduct which indicate[d] that he intend[ed] to inaugurate a general scheme or plan of development [5] for the benefit of himself and the purchasers of various lots, and [6] by numerous conveyances [7] insert[ed] in the deeds substantially uniform restrictions, conditions and covenants against the use of the property . . . .

*Evans*, 796 S.W.2d at 466 (quoting *Minner v. City of Lynchburg*, 129 S.E.2d 673, 679 (Va. 1963)). When the developer's actions satisfy all of these requirements,

> "the grantees acquire by implication an equitable right, variously referred to as an implied reciprocal negative easement or an equitable servitude, to enforce similar restrictions against that part of the tract retained by the grantor or subsequently sold without the restrictions to a purchaser with actual or constructive notice of the restrictions and covenants."

*Evans*, 796 S.W.2d at 466 (quoting *Minner*, 129 S.E.2d at 679). "The most common test of the existence of a general building or neighborhood scheme is an intent that the protection of the restrictive covenant[s] inure to the benefit of the purchasers of the lots in the tract." *Lehmann*, 510 S.W.2d at 680. "Such an intent is said to arise from representations as to the restrictions made for the purpose of inducing the purchaser of the several lots to pay higher prices because of the restrictions." *Id.*

Bitgood failed to meet his burden to establish the existence of a general plan or scheme applicable to both his and Appellees' tracts. The evidence does not show, among other facts, that the D'Amicos developed the Larger Tract for sale in lots nor

18

does it establish that they inserted in the deeds substantially uniform restrictions, conditions, and covenants against the use of the property. *See Evans*, 796 S.W.2d at 466. The pleadings and evidence established that the restrictions, conditions, and covenants governing the parcels conveyed by the D'Amicos were not "substantially uniform" and were, in fact, vastly different.[4]

> As the Supreme Court has explained, the imposition of restrictions on only one piece of property or one portion of a larger parcel is evidence of a general scheme covering only the restricted land. Examining the law of numerous other states, the Court explained that only the land specifically restricted is subject to restrictive covenants, and those covenants benefit only the land so restricted. When a landowner imposes different conditions on different portions of his land or subdivides the land in stages, "for purposes of the implied reciprocal negative easement doctrine, each separate recording create[s] a separate and distinct subdivision with its own set of restrictions benefitting and burdening only the land in that particular subdivision."

---

[4] Bitgood cites *Hooper v. Lottman*, 171 S.W. 270, 272 (Tex. App.—El Paso 1914, no writ), for the proposition that the lack of uniformity in the restrictions and deeds for the Larger Tract does not conclusively establish the lack of a general scheme. *Hooper* is distinguishable in that it involved deed restrictions imposed by the original developer of the land and on an entire section of developed land. In the present case, the restrictions at issue were never part of the 1975 D'Amico Restrictions which specifically only applied to three small unrelated parcels, and instead the restrictions were placed on Appellees' 1.57 acres by a subsequent purchaser. The evidence in the case at bar simply does not support the existence of a general plan or scheme. In fact, the record includes a plat map of a 63.611 acre tract owned by the D'Amicos that is near the 5.935 acre Larger Tract, but unlike the 5.935 acre Larger Tract, the plat map shows the D'Amicos subdivided the 63.611 acre parcel into what they described as the Tres Subdivision, they delineated lots and roads in the subdivision, and they also imposed restrictions upon the entire subdivision. Had the D'Amicos wanted to subject the entire 5.935 acre Larger Tract to a similar general scheme of restrictions, they could have done so in a similar fashion as they did for the Tres Subdivision.

19

*Country Cmty. Timberlake Vill., L.P.*, 438 S.W.3d at 670 (quoting *Evans*, 796 S.W.2d at 472) (citations omitted).

Not only has Bitgood failed to show the existence of a general plan or scheme of development, but he has also failed to show that the alleged general plan or scheme of development with the alleged restrictions he seeks to enforce induced him to purchase his parcels out of the Larger Tract. *See Ski Masters*, 269 S.W.3d at 669. The trial court was presented with evidence that D'Amico initially sold the two parcels to Bitgood, as well as the parcels that would ultimately be purchased by Harkness, without any such restrictions. Bitgood purchased his parcels prior to any restrictions being imposed within the Hitchcock deed. Bitgood could not have been induced to purchase his parcels by the existence of such restrictions or an alleged general plan or scheme because none existed at that time Bitgood purchased his parcels from D'Amico. The trial court correctly concluded that Appellees' tract was not part of a general plan or scheme of development that would bring it within the exception to the general rule that requires privity of contract. *See Ski Masters*, 269 S.W.3d at 669; *Hooper*, 171 S.W. at 272.

Bitgood also argues he has standing based on the express language of the restriction in paragraph (U) in the Hitchcock deed that states that "[t]he covenants, conditions, restrictions, and easements of this declaration shall run with and bind the property and shall inure to the benefit of and be enforceable by any property owner

20

within the [Larger Tract.]" The Supreme Court of Texas in *Baker v. Henderson*, 153 S.W.2d 465 (Tex. 1941), explained that similar express language does not establish standing where there is no privity of contract between the party trying to enforce the restriction and the owner of the restricted property. In this case, there is an absence of a general plan or scheme, and the party trying to enforce the restriction did not purchase their property in reliance on the restriction or the restriction was not part of the consideration paid for their property. *See id.* at 468-70. Bitgood lacks privity of contract and he lacks standing and cannot rely upon the language in the Hitchcock deed restrictions.

We conclude that Bitgood has not met his burden to show that he has standing to enforce the restrictive covenants in question. Bitgood has not shown that he was a party to the covenant, has not established that he is in privity of estate with the contracting parties, and has not established that there was a general plan or scheme of development, or that he relied upon the restrictions in question as an inducement to the purchase of his parcels. *See Country Cmty. Timberlake Vill., L.P.*, 438 S.W.3d at 668. The trial court correctly concluded that the temporary injunction was entered in error because Bitgood lacked standing to enforce the alleged restriction. Based on the record before us, we cannot conclude that the trial court abused its discretion in granting the motion to dissolve the temporary injunction. Issues one and two are overruled.

Continuance

In his third and last issue, Bitgood argues that the trial court erred in dismissing Bitgood's claims before allowing for additional discovery on Bitgood's standing. In his response to the Motion, Bitgood stated that "prior to granting Defendants' Motion, should the Court be so inclined, Plaintiff requests the Court to continue the hearing and allow Plaintiff to conduct discovery related to subject matter jurisdiction."

A decision on a motion for continuance lies within the sound discretion of the trial court, and an appellate court will not disturb a trial court's denial of a motion for continuance unless the record reveals a clear abuse of discretion. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002). Bitgood had the burden to plead, and when challenged, to prove facts that affirmatively showed his standing to bring the suit. *See Tex. Ass'n of Bus*., 852 S.W.2d at 446; *In re S.M.D*., 329 S.W.3d at 13. Because the pleadings and evidence before the trial court affirmatively established that Bitgood lacked standing to bring the suit, we cannot say the trial court's denial of Bitgood's motion for continuance was a clear abuse of discretion. Issue three is overruled.

Having overruled all Appellant's issues, we affirm the trial court's order.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on February 16, 2021
Opinion Delivered June 10, 2021

Before Golemon, C.J., Horton and Johnson, JJ.